## JUSTICE v STATE OF MICHIGAN

Docket No. 77679. Submitted April 15, 1985, at Lansing.—Decided
September 3, 1985. Leave to appeal applied for.

Julia Justice, who with her children received Aid to Dependent
Children (ADC) benefits, purchased a home subject to a mort-
gage. The amount of the monthly mortgage payment made her
eligible under Michigan Department of Social Services ADC
rules to a monthly excess shelter allowance. The department
failed to pay Justice the excess shelter allowance and, as a
result, Justice defaulted and foreclosure proceedings were com-
menced. Justice petitioned for an administrative hearing. Fol-
lowing that hearing, the hearing officer found that Justice had
been wrongfully denied the excess shelter allowance and or-
dered that reimbursement be made to Justice for the back
excess shelter allowances and that the department assist Jus-
tice in redeeming the foreclosed mortgage. For reasons not
apparent in the record, the department failed to comply with
the order and the house was lost at the expiration of the
redemption period. Justice brought an action in the Court of
Claims against the State of Michigan and the Department of
Social Services, seeking monetary damages for losses sustained
by the loss of the home and consequential damages. Defendants
moved for accelerated judgment on the basis that the Court of
Claims lacked subject-matter jurisdiction because plaintiff was,
in essence, seeking review of the administrative order. The
Court of Claims, Ray C. Hotchkiss, J., granted defendants'
motion. Plaintiff appealed. The Court of Appeals reversed,
holding that the Court of Claims had jurisdiction, since the
nature of the claim was one for damages for tortious conduct.
Docket No. 51091, decided May 27, 1981 [unreported]. On
remand, defendants moved for summary judgment on the basis
of governmental immunity. The Court of Claims, Carolyn Stell,

REFERENCES FOR POINTS IN HEADNOTES

[1-3] Am Jur 2d, Municipal, School, and State Tort Liability §§ 27 et
seq.

Modern status of rule excusing governmental unit from tort liabil-
ity on theory that only general, not particular, duty was owed
under circumstances. 38 ALR4th 1194.

J., granted defendants' motion for summary judgment. Plaintiff appealed. *Held:*

1. The administering of a social welfare program such as ADC is clearly a governmental function for which the defense of governmental immunity continues to exist.

2. While the failure of individual employees to discharge the ministerial duties mandated by the administrative order requiring payment of the excess shelter allowance to plaintiff would have supported an actionable claim against those employees, since those employees would not have been protected by governmental immunity for their negligence in the discharge of a ministerial duty, plaintiff failed to name the individual employees as defendants.

3. Plaintiff has not pled facts which would establish that defendants committed an intentional tort or an *ultra vires* act such as would defeat the defense of governmental immunity.

Affirmed.

1. GOVERNMENTAL IMMUNITY — SOCIAL SERVICES — WELFARE PAYMENTS — GOVERNMENTAL FUNCTIONS.

The Department of Social Services, being a state governmental agency, is immune from suit for monetary and consequential damages arising out of the loss of equity in a house caused by the failure of the department to make to the plaintiff required shelter allowance payments under the Aid to Dependent Children program, since the department in processing such allowances is engaged in a governmental function and is thus statutorily immune from tort liability in the discharge of that function (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — STATE EMPLOYEES.

A tort claim against an individual state employee exists where the employee is responsible for the discharge of a particular act on behalf of a state agency and fails to discharge that act even though the agency has been ordered by a hearing officer following an administrative hearing that it must do the act, since the employee is not clothed with governmental immunity under those circumstances.

3. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS — PLEADINGS.

An allegation that a state agency failed to undertake some act required of it and failed to comply with an administrative order will not support the claim that the agency engaged in an intentional tort or acted in an *ultra vires* fashion such as will defeat the defense of governmental immunity in the absence of an allegation that the failure was the result of an agency

policy, directive or procedure; negligence is not transformed into an intentional tort by merely alleging that the defendant's negligent activity was intentional, willful and in conscious disregard of the consequences.

*Wayne County Neighborhood Legal Services, Inc* (by *Susan McFarland),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *James D. Clarke,* Assistant Attorney General, for defendant.

Before: DANHOF, C.J., and M. J. KELLY and M. E. DODGE,* JJ.

M. J. KELLY, J. Plaintiff appeals as of right from an order of summary judgment under GCR 1963, 117.2(1), dismissing her action against the defendants on grounds of governmental immunity. We affirm.

According to the complaint, plaintiff and her minor children are recipients of Aid to Dependent Children (ADC) benefits, 42 USC 601 *et seq.,* administered in this state by the Department of Social Services. MCL 400.56; MSA 16.456. In 1977, plaintiff purchased a home in Detroit subject to a monthly mortgage payment of $188. Plaintiff notified the department of the purchase and applied for excess shelter allowance since, at that time, she was receiving the county maximum of $120 per month. Under the rules and regulations promulgated by the department, certain ADC recipients could qualify for up to $220 a month in excess shelter payments. The department improperly denied plaintiff's application for excess shelter benefits and also improperly denied her application for other benefits. As a result, plaintiff defaulted on

* Circuit judge, sitting on the Court of Appeals by assignment.

her mortgage and foreclosure proceedings were commenced.

Plaintiff timely petitioned for an administrative hearing, which was held in March of 1978. The hearing officer made findings of fact and rendered the following order:

"1. That the claimant had 10% equity in her home as of the purchase of said home.

"2. That the department had proof of the purchase and of the 10% equity as of September of 1977.

"3. That the claimant did not receive an excess shelter allowance.

"4. That claimant's home has presently been sold in foreclosure proceedings.

"5. Claimant has $600 saved from monthly shelter allowance, the rest having been spent on food due to the nonreceipt of food stamps.

"The department in this case is therefore ordered to grant the claimant a supplementation for the nonreceipt of an excess shelter allowance. The amount of the supplementation is to be computed as the difference between what the cost was to claimant and the amount she did receive. The $280 shall be added on and not considered by the department as not payable, in that the claimant does not have this money due to a food stamp error. It is further ordered that the department's finding of excess property prior to possession by the claimant of her home is invalid and therefore shall not be a bar to the performance of this order. It is further ordered that there should be a service referral made in this case so that the department can—by whatever appropriate methods they find—help to reinstate the claimant's mortgage."

The department, however, violated its own administrative order by failing to pay the back excess shelter payments and by failing to cooperate with plaintiff and the mortgagee on redemption. When the redemption period expired on Septem-

ber 23, 1978, plaintiff lost the home and all equity in it.

Plaintiff filed this action in the Court of Claims on September 24, 1979, against the State of Michigan and the department, seeking (1) monetary damages to repurchase the home, (2) lost past equity and expected present equity and appreciation, and (3) consequential damages. Defendants moved for accelerated judgment on October 15, 1979, alleging that the Court of Claims lacked jurisdiction because plaintiff sought review of an administrative order and that plaintiff's claim was barred by an accord and satisfaction. In support of the accord and satisfaction defense, the department claimed that it had issued plaintiff a check for the back benefits prior to the expiration of the redemption period and that the department had been instructed by plaintiff's attorney not to take any action on the reinstatement of plaintiff's mortgage. Plaintiff denied these allegations.

On March 28, 1980, the Court of Claims granted accelerated judgment on the ground that it lacked subject-matter jurisdiction. The viability of the accord and satisfaction defense was not reached. In an unpublished opinion by this Court released May 27, 1981, we held that plaintiff was not seeking review of an administrative order but was instead suing for monetary and consequential damages resulting from tortious conduct. We found that the Court of Claims had subject-matter jurisdiction, and we reversed and remanded for further proceedings.

On November 15, 1982, defendants renewed their motion for accelerated judgment on the ground of accord and satisfaction. Simultaneously, defendants filed a motion for summary judgment under both GCR 1963, 117.2(1) and (3), claiming that plaintiff had failed to state a claim for relief

since defendants were entitled to governmental immunity. On March 26, 1984, the Court of Claims issued an opinion and order granting summary judgment pursuant to GCR 1963, 117.2(1), and holding that *Elliott v Dep't of Social Services,* 124 Mich App 124; 333 NW2d 603 (1983), was dispositive as to defendants' immunity from suit. Inasmuch as the summary judgment order was dispositive, no ruling was made on defendants' motion for accelerated judgment.

During the pendency of this appeal, the Supreme Court decided and released *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), construing the legislatively created doctrine of governmental immunity. MCL 691.1407; MSA 3.996(107). We conclude that under *Ross,* plaintiff's claims in this case aginst the State of Michigan and the Department of Social Services must be dismissed.

MCL 691.1407; MSA 3.996(107) provides in relevant part:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The majority in *Ross* opted for a broad interpretation of "governmental function" and held:

"*[A] governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law.* When a governmental agency engages in mandated or authorized activities, it is immune from tort liability, unless the activity is

proprietary in nature (as defined in § 13) [MCL 691.1413; MSA 3.996(113)] or falls within one of the other statutory exceptions to the governmental act. Whenever a governmental agency engages in an activity which is not expressly or impliedly mandated or authorized by consitutution, statute, or other law (*i.e.,* an *ultra vires* activity), it is not engaging in the exercise or discharge of a governmental function. The agency is therefore liable for any injuries or damages incurred as a result of its tortious conduct." *Ross, supra,* p 620 (emphasis added).

Inasmuch as the department is authorized to evaluate requests for ADC benefits and determine elegibility under the Social Welfare Act, MCL 400.1 *et seq.;* MSA 16.401 *et seq.,* there can be no doubt that the department was engaged in a governmental function when it processed and decided plaintiff's initial application for benefits. The department is thus immune from tort liability relating to its denial of plaintiff's application for excess shelter allowance and other benefits. *Elliott, supra.*

More troublesome is the department's failure to comply with its own administrative order requiring payment of back benefits and assistance in plaintiff's redemption efforts. The Legislature did not intend, under the guise of governmental immunity, to protect state employees who blatantly refuse to comply with the administrative orders. Following careful consideration of the applicable principles of law, however, we conclude that plaintiff's cause of action is against the individual employees involved rather than against the state or the department. Since plaintiff has failed to name the proper defendants in her complaint, the trial court's order of dismissal must be affirmed.

MCL 400.9; MSA 16.409 requires the department to conduct a fair administrative hearing in response to a proper complaint from an aggrieved

claimant. That section of the Social Welfare Act further provides that:

"The hearing authority shall be vested with the powers and duties of the director to hold and decide hearings. *The decisions in these cases shall be binding upon each county or district department of social services involved and shall be complied with by that department.*" (emphasis added.)

Accordingly, once the hearing officer issued his order in this case, Wayne County employees had no choice but to enforce that order as issued. For reasons not developed below because of the procedural posture of this case, the officials or employees of the Wayne County office simply failed to comply with the order.

It appears that any claim is against the individual employees of the Wayne County office for negligent failure to perform the ministerial task of complying with the administrative order. Alternatively, plaintiff's claim is against the employees for acting outside the scope of their authority in refusing to comply with the order. Had plaintiff named these individual employees in the complaint, her action against the state and the department would have been dismissed but her action against the employees would have survived even under *Ross.* 420 Mich 592. See *Bandfield v Wood,* 421 Mich 774; 364 NW2d 280 (1985).

We have considered the equities both for and against an order of remand to allow plaintiff the opportunity to name the individual employees involved. MCR 7.216(A)(2). Admittedly, the law of governmental immunity has been in a state of some confusion during the years plaintiff's suit has been pending in both the trial and appellate courts. However, the appellate courts have been fairly consistent in upholding claims against *indi-*

*vidual* governmental employees for negligent performance of ministerial duties and for the performance of acts outside the scope of employment. See *Layton v Quinn,* 120 Mich App 708, 714-721; 328 NW2d 95 (1982), *remanded* 422 Mich 898 (1985), for a history of this area of the law. Because plaintiff had ample notice of the viability of a claim against the individual employees, we conclude that it would be inappropriate to allow her to introduce there parties into the lawsuit at this late date, especially as there is no assurance that these individuals are still with the Department of Social Services.

Finally, plaintiff's claim for damages against the agency is not saved under either the intentional tort or *ultra vires* exceptions to the doctrine of governmental immunity. Plaintiff has simply failed to plead facts which would support an action against the agency under either of these two theories. Essentially, plaintiff alleges that the department failed to make full shelter payments as required under departmental policy and subsequently failed to comply with its administrative order. There is nothing in this record to suggest that the department's omissions reflected a policy, directive or procedure of the agency rather than a mistake on the part of some unidentified employee. We subscribe to the view that "negligence is not transformed into an intentional tort by merely alleging that defendant's [negligent] activity was intentional, wilful and in conscious disregard of the consequences". *Elliott v Dep't of Social Services, supra,* p 129. See also *Shunk v Michigan (after Remand),* 132 Mich App 632, 636; 347 NW2d 767 (1984), and the dissenting opinions in *Landry v Detroit,* 143 Mich App 16; 371 NW2d 466 (1985), and in *Sanford v Detroit,* 143 Mich App 194; 371 NW2d 904 (1985).

Affirmed.