TUTTLE v BROWN

Docket No. 66281. Submitted August 2, 1983, at Lansing.—Decided December 20, 1983. Leave to appeal applied for.

Plaintiff, Phillip E. Tuttle, brought an action in the Lenawee Circuit Court seeking royalty payments allegedly due under a patent assignment agreement between plaintiff and Federal Screw Works (FSW). Plaintiff invented a hydraulic cleaning device known as a "gun control". Plaintiff filed a patent application and on September 21, 1971, executed a patent assignment agreement with FSW. The agreement gave FSW all of the plaintiff's rights in the invention and patent application. In consideration, FSW agreed to pay plaintiff $25,000 plus 3% royalties "on its annual net receipts from the sale, lease and licensing of Cleaning Devices or the performance of cleaning services for others with the use of Cleaning Devices". FSW was also required to keep records of its net receipts upon which royalties were payable. The agreement further provided that it was binding upon the successors and assigns of the respective parties. The patent was issued on September 12, 1972. FSW performed its obligations under the agreement, but in early 1973 decided to cease the service aspect of its hydroblasting business but continue to manufacture the patented device. On March 7, 1973, FSW entered into an agreement with Alfred J. Brown, II, in which Brown purchased 14 hydroblasting units, including patented gun controls, and one large pump. In addition, Brown received the right to use the Hydromechanics name, a customer list and a promise by FSW not to compete in the hydroblasting service business for a period of five years. Brown assumed none of FSW's obligations and received no express rights under the 1971 patent assignment agreement. FSW paid plaintiff royalties on this transaction. Brown then incorporated Hydromechanics Service Corporation (HSC) as a solely owned corporation and transferred the purchased assets to it. On August 2, 1973, FSW assigned to HSC its entire

REFERENCES FOR POINTS IN HEADNOTES
[1] 60 Am Jur 2d, Patents §§ 330, 332.
[2] 60 Am Jur 2d, Patents §§ 334, 357, 358.
[3] 29 Am Jur 2d, Evidence § 129.

interest under the 1971 agreement and the HSC expressly assumed all of FSW's rights and obligations thereunder. In addition, HSC purchased all of FSW's assets relating to the business of manufacturing, leasing and selling hydroblasting equipment. Only three of the hydroblasting units transferred to HSC at this time included the patented gun controls. Plaintiff thereafter commenced this action against FSW, Brown and HSC for royalty payments allegedly due. Plaintiff and FSW executed a settlement prior to trial. Following a nonjury trial, the trial court, Kenneth B. Glaser, Jr., J., entered a judgment in favor of the plaintiff and against defendants Brown and HSC for a total amount of $73,308.98, including interest. The trial court held that: (1) the March, 1973, transaction constituted an assignment to Brown of FSW's interest in the "use" portion of the 1971 patent assignment agreement, (2) since Brown did not assume any of FSW's obligations, FSW was liable to plaintiff not only on the sale of the devices to Brown but also for royalties on HSC's service income from the devices up to August 2, 1973, (3) the pretrial settlement between plaintiff and FSW extinguished FSW's royalty obligation, and (4) on August 2, 1973, HSC expressly assumed FSW's obligations under the 1971 agreement, and HSC is therefore liable for royalties on all of its net receipts from and after August 2, 1973, regardless of whether HSC's service receipts were generated exclusively from the patented devices purchased in the March, 1973, transaction. Defendants Brown and HSC appeal contending that no royalties were due on the service receipts generated by HSC from the use of the assets purchased in March, 1973, and that all of its service receipts were derived from such assets. *Held:*

1. The trial court erred in finding the March, 1973, transaction to be an assignment of the use portion of the 1971 patent assignment agreement.

2. There is no evidence of collusive action in this case.

3. The trial court erred in finding that plaintiff was entitled to royalties on all of HSC's net receipts after August 2, 1973, including receipts generated from services provided with the patented devices purchased in the March, 1973, transaction. Having unconditionally purchased the 14 hydroblasting units, including patented gun controls, in March, 1973, defendants Brown and HSC were entitled to use the patented articles without obligation to plaintiff. The subsequent assignment of FSW's patent interest to HSC did not operate retroactively to bring the previously purchased items back within the monopoly of the patent. Plaintiff's sole royalty interest in the items sold

in March, 1973, was satisfied when FSW paid the 3% royalty on the purchase price.

4. A remand is necessary for further findings of fact regarding the extent of defendants' service receipts which were derived from the patented devices purchased in March, 1973, and whether the replacement of some broken handles on those devices constituted a reconstruction rather than a mere repairing of the patented gun control. HSC is not liable for royalties on the receipts generated from the cleaning units purchased in March, 1973, but is liable on all other service receipts derived from the use of the patented gun controls. Royalties are payable on all of HSC's net service receipts which defendants cannot prove by a preponderance of the evidence to be derived from the patented devices purchased in March, 1973.

5. Defendants concede liability for royalties on receipts from the sale and lease of patented articles purchased in, or made after, the August 2, 1973, assignment. On remand the trial court shall calculate this amount plus appropriate interest and enter a judgment accordingly.

6. Defendants are not entitled to any setoff for royalties paid by or on behalf of FSW.

Reversed and remanded.

1. PATENTS — ASSIGNMENTS — UNITED STATES CODE.

The assignment of any interest in a patent or patent application must be in writing and must be unambiguous and show a clear intent to part with such interest (35 USC 261).

2. PATENTS — ROYALTIES — SALE OF PATENTED ITEMS.

A patented item passes outside the limits of the patent and the purchaser is free to use it without restriction or further obligation to the patentee or assignee once there is an unconditional sale of the patented item and the patentee or assignee receives all the royalties to which he is entitled.

3. TRIAL — AFFIRMATIVE DEFENSES — BURDEN OF PROOF.

The burden of proof on an affirmative defense is placed on the party raising such a defense.

*Davidson, Staiger, Adair, Hill, Mosier & Devendorf* (by *Wilbur S. Davidson),* for plaintiff.

*Harness, Dickey & Pierce* (by *Don K. Harness* and *Paul A. Keller),* for defendants on appeal.

Before: Hood, P.J., and Cynar and P. J. Marut-
iak,* JJ.

Per Curiam. This case involves a dispute over
royalty payments allegedly due to plaintiff under a
September 21, 1971, "patent assignment agree-
ment" between plaintiff and Federal Screw Works
(FSW). Following a nonjury trial, the trial court
held that defendant Hydromechanics Service Cor-
poration (HSC), as assignee of FSW's rights and
obligations under the September, 1971, agreement,
was liable to plaintiff for royalties on net receipts
from the manufacture, sale and use of the pa-
tented device invented by plaintiff. Judgment was
entered in favor of plaintiff and against defendants
Alfred Brown and HSC in the amount of
$73,308.98, including interest. Defendants appeal.

## I

Plaintiff is the inventor of a hydraulic cleaning
device known as a "gun control". The patented
device is used in connection with a hydroblasting
unit (including pump and hoses) to eject water
under high pressure against a surface to be
cleaned. Plaintiff filed a patent application and, on
September 21, 1971, executed a patent assignment
agreement with FSW. The agreement gave FSW
all of plaintiff's rights in the invention and patent
application, and in consideration FSW agreed to
pay plaintiff $25,000 plus 3% royalties "on its
annual net receipts from the sale, lease and licens-
ing of Cleaning Devices or the performance of
cleaning services for others with the use of Clean-
ing Devices * * *". FSW was also required to keep
records of its net receipts upon which royalties
were payable. The agreement further provided

---

* Circuit judge, sitting on the Court of Appeals by assignment.

that it was binding upon the successors and assigns of the respective parties.

A patent was issued on September 12, 1972. FSW performed its obligations under the agreement, but in early 1973 decided to cease the service aspect of its hydroblasting business. At that time FSW intended to continue manufacturing the patented device. On March 7, 1973, FSW and defendant Brown entered into an agreement in which Brown purchased 14 hydroblasting units, including patented gun controls, and one large pump for the price of $93,100. In addition to the transfer of property, Brown received the right to use the Hydromechanics name, a customer list and a promise by FSW not to compete in the hydroblasting service business for a period of five years. Brown assumed none of FSW's obligations and received no express rights under the 1971 patent assignment agreement. FSW paid plaintiff $2,793 in royalties on this transaction.

Shortly thereafter Brown incorporated HSC as a solely owned corporation and transferred the purchased assets to it.

On August 2, 1973, FSW assigned to HSC its entire interest under the 1971 agreement and HSC expressly assumed all of FSW's rights and obligations thereunder. HSC paid $25,000 in consideration for the assignment. In addition, HSC purchased all of FSW's assets relating to the business of manufacturing, leasing and selling hydroblasting equipment. Only three of the hydroblasting units transferred to HSC at this time included the patented gun controls.

Plaintiff commenced this action against FSW, Brown and HSC for royalty payments allegedly due. Plaintiff and FSW executed a settlement prior to trial.

The trial court held in pertinent part that: (1)

the March, 1973, transaction constituted an assignment to Brown of FSW's interest in the "use" portion of the 1971 patent assignment agreement; (2) since Brown did not assume any of FSW's obligations, FSW was liable to plaintiff not only for royalties on the sale of the devices to Brown but also for royalties on HSC's service income from the devices up to August 2, 1973; (3) the pretrial settlement between plaintiff and FSW extinguished FSW's royalty obligation; (4) on August 2, 1973, HSC expressly assumed FSW's obligations under the 1971 agreement, and HSC is therefore liable for royalties on *all* of its net receipts from and after August 2, 1973, regardless of whether HSC's service receipts were generated exclusively from the patented devices purchased in the March, 1973, transaction.

Plaintiff agrees with the court's decision and requests this Court to affirm. HSC concedes that it is liable for royalties on net receipts from sales, leasing and services generated from patented devices which it acquired in, or manufactured after, the August 2, 1973, transaction. HSC argues, however, that the March, 1973, transaction was merely a sale of assets under which FSW was liable for (and paid) the royalties, and that no royalties were due on the service receipts generated by HSC from the use of those assets. According to HSC, the evidence established that all of its service receipts were derived from the assets purchased in March, 1973, and plaintiff is therefore not entitled to royalties on those receipts.

II

*Did the trial court err in finding the March, 1973, transaction to be an assignment of the use portion of the 1971 patent assignment agreement?*

While plaintiff characterizes this as a "non-is-

sue", we believe the question is crucial to a determination of whether royalties are owed on HSC's service receipts from and after August 2, 1973.

The assignment of any interest in a patent or patent application must be in writing to fulfill the requirements of 35 USC 261. An instrument assigning an interest in a patent must be unambiguous and show a clear intent to part with such interest. *Switzer v Comm'r of Internal Revenue,* 226 F2d 329, 330 (CA 6, 1955).

We find that the March, 1973, agreement and bill of sale do not demonstrate a clear intent on the part of FSW to transfer an interest in the 1971 patent assignment agreement. Indeed, patent rights are not even mentioned in the instruments. According to the testimony of FSW's president, the purchase price of the equipment sold in that transaction was based on book value, and no other consideration was involved. This should be contrasted with the August 2, 1973, transaction, in which patent rights were *expressly* assigned to HSC for separate consideration in the amount of $25,000.

We believe the trial court placed too much emphasis on the noncompetition clause included in the agreement. Although the parties certainly intended that Brown would engage in the hydroblasting service business and that FSW would cease such operations, it does not follow that an assignment of FSW's interest in the patent was intended. The 1971 patent assignment agreement permitted, but did not require, FSW to engage in the service industry. The record demonstrates that prior to March, 1973, FSW decided to cease its service operations for legitimate business reasons. In our opinion, FSW's agreement not to compete with Brown and the transfer of FSW's customer

list and trade name do not show a clear and unambiguous intent to assign an interest in the patent.

The trial court also expressed concern about parties collusively "laundering" use royalties by first selling the property to be used in the service business and later assigning the patent rights. While we can conceive of such fraudulent schemes, there is no evidence of collusive action in this case. To the contrary, FSW's president testified that as of March, 1973, FSW fully intended to keep its patent interest and continue manufacturing the devices. Both FSW's president and Brown testified that the negotiations leading up to the March, 1973, agreement contained no discussions of a subsequent assignment of the patent.

We conclude that the March, 1973, transaction was not an assignment of the patent interest.

### III

*Did the trial court err in finding that plaintiff was entitled to royalties on all of HSC's net receipts after August 2, 1973, including receipts generated from services provided with the patented devices purchased in the March, 1973, transaction?*

The trial court essentially held that since HSC stood in the place of FSW after the August, 1973, assignment, and since FSW would have been liable for royalties on all net receipts after that date, HSC was likewise liable. This was error.

The 1971 patent assignment agreement entitled plaintiff to royalties on *FSW's* net receipts from the sale, lease, licensing or use of the patented devices. It clearly did not create a royalty obligation on third or subsequent parties who purchased the patented articles from FSW and then used

them to generate service income, except, of course, where the third party was an assignee of FSW's rights and obligations under the 1971 instrument.

Once there is an unconditional sale of a patented item and the patentee or assignee receives all the royalties to which he is entitled, the item passes outside the limits of the patent and the purchaser is free to use it without restriction or further obligation to the patentee or assignee. See *United States v Univis Lens Co,* 316 US 241; 62 S Ct 1088; 86 L Ed 1408 (1942); *Henry v A B Dick Co,* 224 US 1; 32 S Ct 364; 56 L Ed 645 (1912), *overruled on other grounds, Motion Picture Patents Co v Universal Film Mfg Co,* 243 US 502; 37 S Ct 416; 61 L Ed 871 (1917). Therefore, having unconditionally purchased the 14 hydroblasting units, including patented gun controls, in March, 1973, defendants Brown and HSC were entitled to use the patented articles without obligation to plaintiff. The subsequent assignment of FSW's patent interest to HSC did not operate retroactively to bring the previously purchased items back within the monopoly of the patent. Plaintiff's sole royalty interest in the items sold· in the March, 1973, transaction was satisfied when FSW paid the 3% royalty on the purchase price of those items.

### IV

*Did defendants carry their burden of proving that all of HSC's service receipts were generated from cleaning devices purchased in March, 1973, and not from cleaning devices received in, or manufactured after, the August 2, 1973, assignment?*

Defendants' assertion that all service receipts

were derived from units purchased in March, 1973, was raised as an affirmative defense and the burden is therefore on defendants to prove it. In addition, the 1971 agreement required FSW (and HSC, as assignee) to "keep records of all its net receipts on which royalties are payable". Therefore, royalties are deemed payable on all of HSC's net service receipts except to the extent defendants can prove by a preponderance of the evidence that such receipts were derived from the patented devices purchased in March, 1973.

It is necessary to remand the case for further findings of fact on this issue. The trial court's February 27, 1981, opinion states at one point as follows:

"Defendant Hydro claims all revenue from cleaning services resulted in the use of machines from the March 7, 1973, transaction. However it never kept records as to which machines were used on which job and the defendant has not sustained the burden of proof on that point."

Later in the opinion, however, the court stated:

"It may well be, as Hydro claims, that none of the three patented machines included in the August 2nd transaction were used to generate revenue from Cleaning Services to customers. *It is undisputed that most or all of the 'net receipts' from Cleaning Services to customers after August 2 was from machines which embodied the patented device obtained in the March 7 transaction. This would be sufficient to entitle Tuttle to his royalties from FSW and therefore it is sufficient to require Hydro to do the same.*" (Emphasis added.)

In any event, the trial court believed that it was unnecessary to reach the issue because, as discussed above, the court ruled that FSW would

have been liable for royalties on all service receipts and that HSC, as assignee of FSW's patent rights and obligations, was likewise liable without regard to the specific cleaning devices from which the income derived.

Our review of the record does not resolve the question. Defendants point to the testimony of Brown and to HSC sales invoices in arguing that the service fleet was comprised entirely of units purchased in March, 1973. On the other hand, there is an almost total lack of records as to which cleaning devices were used on particular service jobs.

Larry Bartrow ran the FSW Hydromechanics Division and began as crew foreman for HSC's service operations in March, 1973. He testified that no records were kept to identify which units were used on particular jobs. He further stated that the units which ran were the ones they used and that several times units manufactured by HSC, as well as those previously purchased from FSW, were used in the service operation.

In addition, Bartrow testified that the handles on the gun controls would frequently break and would have to be replaced with the spare handles in stock. Plaintiff correctly contends that HSC's implied license to use the patented articles purchased in March, 1973, existed only as long as the identity of the articles was preserved. Whether the handles were in fact replaced by handles purchased in, or made after, the August 2, 1973, transaction, and whether the replacement constituted a reconstruction rather than a mere repairing of the patented gun control, should be considered by the trial court on remand. See, *e.g., Aro Manufacturing Co, Inc v Convertible Top Replacement Co, Inc,* 365 US 336; 81 S Ct 599; 5 L Ed 2d

592 (1961), *reh den* 365 US 890; 81 S Ct 1024; 6 L Ed 2d 201 (1961); *National-Standard Co v UOP, Inc,* 616 F2d 339 (CA 7, 1980).

To summarize, the trial court on remand should determine what amount, if any, of HSC's service receipts were generated from cleaning units embodying the patented devices purchased by HSC in March, 1973. HSC shall not be liable for royalties on these receipts, but shall be liable for royalties on all other service receipts derived from use of the patented gun controls. The trial court may take additional testimony on this issue.

Defendants concede liability for royalties on receipts from the sale and lease of patented articles purchased in, or made after, the August 2, 1973, assignment. The trial court on remand should also calculate this amount plus appropriate interest and enter judgment accordingly.

Finally, we hold that defendants are not entitled to any setoff for royalties paid by or on behalf of FSW.

Reversed and remanded. We do not retain jurisdiction.