DAVIS v LHIM (ON REMAND)

Docket No. 84500. Submitted April 25, 1985, at Lansing.—Decided November 5, 1985. Leave to appeal applied for.

　　Plaintiff, Ruby Davis, administratrix of the estate of Mollie Barnes, deceased, brought a wrongful death action against Dr. Yong-Oh Lhim, a staff psychiatrist at Northville State Hospital, a state mental hospital. Mollie Barnes was shot and killed by her son, John Patterson, who had been a patient at Northville under Dr. Lhim's care. Plaintiff alleged negligence in Dr. Lhim's discharge of Patterson and breach of duty to warn Mollie Barnes of the danger Patterson posed to her. The Wayne Circuit Court, Lucile A. Watts, J., entered judgment for plaintiff on a jury verdict. Defendant appealed, and the Court of Appeals affirmed, holding that a staff psychiatrist at a state mental institution is not immune from liability for negligent discharge of a patient and that a psychiatrist owes a duty of reasonable care to persons who are readily identified as foreseeably endangered by his patient. 124 Mich App 291 (1983). Defendant sought leave to appeal to the Supreme Court which, in lieu of granting leave to appeal, remanded to the Court of Appeals for reconsideration in light of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984). Upon remand, *held:*

　　1. Under the tests set forth in *Ross* for determining whether an individual governmental employee is entitled to immunity from tort liability, the defendant is not immune from such liability. He was required to act according to the relevant standard of care, which is that of a reasonable psychiatrist practicing medicine in the light of present-day scientific knowledge. He was further required to act in a "nontortious manner".

　　2. Plaintiff proved a prima facie case, and the defendant was

REFERENCES

Am Jur 2d, Hospitals and Asylums §§ 14 *et seq.*

Am Jur 2d, Municipal, School, and State Tort Liability §§ 27 *et seq.*

Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.

Governmental tort liability for injuries caused by negligently released individual. 6 ALR4th 1155.

unable to make the requisite showing that he was nonetheless entitled to immunity.

Affirmed.

CYNAR, J., dissented. He would hold that the defendant, in deciding whether to release Patterson or whether there was a need to warn plaintiff's decedent, was involved in a complex medical discretionary decision, and was thereby entitled to immunity from tort liability. He would reverse.

### OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES.

A governmental employee may be immune from tort liability only when he is (1) acting during the course of his employment and acting, or reasonably believes he is acting, within the scope of his authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial, acts (MCL 691.1401 *et seq.;* MSA 3.996[101] *et seq.).*

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES.

The specific acts complained of, rather than the general nature of the activity, must be examined to determine the existence and scope of an individual governmental employee's or agent's immunity from tort liability in a particular situation.

3. GOVERNMENTAL IMMUNITY — PSYCHIATRISTS — STANDARD OF CARE.

The standard by which the actions of a psychiatrist, in releasing a patient from confinement in a state mental hospital, must be judged is that of a reasonable psychiatrist practicing medicine in the light of present-day scientific knowledge.

### DISSENT BY CYNAR, J.

4. GOVERNMENTAL IMMUNITY — PSYCHIATRISTS — DISCRETIONARY DECISION-MAKING.

*A psychiatrist's decision of whether a patient should have been released from a state mental hospital or whether there was a need to warn the patient's family of the patient's condition involved complex medical discretionary decision-making, and the psychiatrist, a governmental employee, was entitled to immunity from tort liability arising from the release of the patient.*

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Mark S. Meadows,* Assistants Attorney General, for defendant.

ON REMAND

Before: R. M. MAHER, P.J., and BRONSON and CYNAR, JJ.

PER CURIAM. This Court previously affirmed a judgment in favor of plaintiff against defendant, a staff psychiatrist at Northville State Hospital, 124 Mich App 291; 335 NW2d 481 (1983). The Supreme Court, after its decision in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), has remanded the case for reconsideration in light of the *Ross* decision. 422 Mich 875 (1985). Upon reconsideration, we affirm.

In our previous opinion, we held that defendant was not entitled to immunity as a governmental employee under a variant of the "scope of employment" test. Judge CYNAR dissented, concluding that defendant was immune under either the scope of employment or discretionary-ministerial standard.

Now that the Supreme Court has required that we reconsider that opinion, it is necessary to set forth the salient points of the *Ross* opinion as it pertains to this case.

In discussing individual immunity, the Supreme Court recognized its common-law origins, *Ross, supra,* pp 626-629. The Supreme Court further noted that the doctrine of individual immunity is unaffected by any interpretation of the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq., Ross, supra,* pp 628-629. Ac-

knowledging the confusion engendered by its decisions in *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), and *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), the Supreme Court endeavored to set forth clear tests for use in determining the applicability of the doctrine of individual immunity:

"We therefore hold that judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their judicial, legislative, or executive authority. Lower level officials, employees, and agents are immune from tort liability only when they are

"1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

"2) acting in good faith; and

"3) performing discretionary, as opposed to ministerial acts." *Ross, supra,* pp 633-634. (Footnote omitted.)

In this case, as in most, it is the final requirement that will prove decisive in determining the applicability of the doctrine. There is no suggestion that defendant was not acting within the scope of his employment and within the scope of his authority or that defendant was not acting in good faith. Unfortunately, the *Ross* opinion provides no "bright line" standard by which the determination whether an employee was performing a discretionary or ministerial act can be made. The Supreme Court recognized that fact and attempted to offer some direction to assist in making the necessary determination.

First, the Supreme Court in *Ross* stated that the common definition of discretionary acts "encompasses *more* than quasi-judicial or policy-making authority", *Ross, supra,* p 634. Therefore, the

Court utilized the term "discretionary-decisional" as more accurate. Similarly, the Court defined ministerial acts as *broader* than "those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice". *Id.* The Supreme Court explained:

"An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a nontortious manner. In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making." *Ross, supra,* pp 634-635.

Implicit in the Supreme Court's explanation is the recognition that to decide whether or not to engage in a particular activity means that either alternative would be permissible. We conclude that the Supreme Court did not intend to shield from liability persons who were faced with doing something permissible or something impermissible —merely because it was a theoretical option. Where an individual is faced with such a "choice", we conclude that the Supreme Court intended that situation to be placed in the "ministerial-operational" category.[1] Finally, the Court instructed

---

[1] The subject of legal malpractice will help illustrate this conclusion. Having decided to file a lawsuit on an apparently valid claim, an attorney has discretion in deciding on what day that lawsuit is to be commenced within the applicable statute of limitations. However, it is incomprehensible to suggest that an attorney has discretion to file a lawsuit *after* the expiration of the statute of limitations. Similarly, an attorney at trial has discretion regarding the presentation of evidence and the sequence of witnesses called to testify. However, an attorney, consistent with the applicable standard of care, cannot fail to present available evidence necessary to prove an element of the cause of action alleged.

that "to determine the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined". *Ross, supra,* p 635.

In addition to the explanation of its holding offered by the Supreme Court in *Ross, supra,* we can also obtain guidance from the applications of the discretionary-decisional versus ministerial-operational test in *Ross* itself.[2]

In the *Regulski* case, decided with *Ross,* the Supreme Court identified offering a particular class at school, allowing plaintiff to participate in the class and deciding where and when to conduct the class as discretionary-decisional acts. Instruction and supervision of plaintiff in the class, on the other hand, were ministerial-operational activities "[a]lthough some decision-making is involved in these activities". *Ross,* p 651. The Court also pointed out that establishing a school's *policy* as to safety precautions is a discretionary-decisional act.

In *Zavala,* another case decided with *Ross,* plaintiff alleged that certain police officers were negligent in failing to stop a fight involving the brother of plaintiff and in failing to prevent plaintiff's assailant from shooting plaintiff. The Supreme Court held that the officers' act—deciding not to deal with the disturbance until backup assistance arrived—was discretionary. The Supreme Court explained:

---

[2] In addition to the *Ross* case itself, the Supreme Court opinion in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), encompassed the following cases: *Willis v Dep't of Social Services,* 113 Mich App 30; 317 NW2d 273 (1982); *Siener v Dep't of Mental Health,* 117 Mich App 179; 323 NW2d 642 (1982); *Rocco v Dep't of Mental Health,* 114 Mich App 792; 319 NW2d 674 (1982); *Regulski v Murphy,* 119 Mich App 418; 326 NW2d 528 (1982); *Trezzi v Detroit,* 120 Mich App 506; 328 NW2d 70 (1982); *Disappearing Lakes Ass'n v Dep't of Natural Resources,* 121 Mich App 61; 328 NW2d 570 (1982); *Zavala v Zinser,* 123 Mich App 352; 333 NW2d 278 (1983).

"Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.*, make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been made, however, the execution thereof must be performed in a proper manner, *e.g.*, the arrest must be made without excessive force, the pursuit of the suspect must not be done negligently, the request for assistance must include reasonably accurate information, etc. Since plaintiffs merely alleged negligent performance of a discretionary-decisional act, summary judgment for the individual officers was properly granted." *Ross, supra,* pp 659-660.

This view regarding the discretionary nature of certain actions by police officers is consistent with decisions from other states. See, *e.g., Everton v Willard,* 468 So 2d 936 (Fla, 1985); *Marshall v Ellison,* 132 Ill App 3d 732; 87 Ill Dec 704; 477 NE2d 830 (1985).

In *Willis,* another of the cases decided with *Ross,* the Court concluded that a decision to hire employees was discretionary-decisional, as were decisions about conducting an outing for delinquent and neglected juveniles. The care and supervision of the children during the outing, however, were ministerial-operational acts.

The preceding review of *Ross,* including the applications of the discretionary-ministerial test in *Ross,* leads to the conclusion that defendant is not immune.

Plaintiff asserted two distinct acts of negligence. First, plaintiff alleged that defendant failed to exercise reasonable care in the discharge of the

son of plaintiff's decedent in view of the clinical evidence which, according to the relevant standard of care, required that the son of plaintiff's decedent not be released.[3] Second, plaintiff alleged that the relevant standard of care required defendant to warn plaintiff's decedent of the danger to her posed by her son in the event of his negligent discharge. It is worth reiterating that the standard by which defendant's actions *must* be judged (and it must be assumed that the jury applied this standard) is that of a reasonable psychiatrist practicing medicine in the light of present-day scientific knowledge. See, *Swanek v Hutzel .Hospital,* 115 Mich App 254; 320 NW2d 234 (1982). Consistent with the common law, defendant could not choose to ignore that standard and escape liability for professional negligence. *Wood v Posthuma,* 108 Mich App 226; 310 NW2d 341 (1981). A professional, otherwise liable because he or she has deviated from the appropriate standard of care, cannot contend that he or she had discretion to violate that standard.

Thus, in terms of *Ross* defendant was required to be "obedient" to a standard and perform his duties consistent therewith, having "little or no choice" in the matter, the *minimal* definition of a ministerial-operational activity. As stated in *Ross, supra,* p 635, ministerial acts "must be performed in a non-tortious manner". That was the basis of plaintiff's complaint and the proofs offered at trial.[4] Plaintiff having proved a prima facie case, it was incumbent upon defendant to show that he

---

[3] The relevant standard of care included following criteria set forth in the Mental Health Code. See MCL 330.1401; MSA 14.800(401). Both experts agreed that John Patterson met the criteria of a person who should not be discharged.

[4] Neglience (including professional negligence) may be described as "a species of a generic action based in torts", *Maki v City of East Tawas,* 385 Mich 151; 188 NW2d 593 (1971).

was nonetheless entitled to immunity.[5] Defendant was unable to make the requisite showing.

It may be argued that this court's holding means that a licensed professional is never entitled to immunity for acts of professional negligence and for this reason is at variance with the purpose of individual immunity as stated by the Supreme Court in *Ross:*

"Individual immunity exists to ensure that a decision maker is free to devise the best overall solution to a particular problem, undeterred by the fear that those few people who are injured by the decision will bring suit. We therefore will no longer define the parameters of individual immunity with reference to whether the tortfeasor was engaged in the exercise or discharge of a governmental function." *Ross, supra,* p 631.

However, we believe that it is not possible to focus on that single paragraph and thereby ignore the rest of the *Ross* opinion. For, in addition to the lengthy discussion of the discretionary-decisional versus ministerial-operational standard (set forth in this opinion, *supra),* the Supreme Court concluded its treatment of individual immunity as follows:

"Under the rules set forth today, it is obvious that

---

[5] As stated earlier in the text, in *Ross, supra,* the Supreme Court stated that the doctrine of individual immunity arose out of the common law and is unaffected by any interpretation of the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.* As with any other common-law affirmative defense, it is the proponent of the defense that has the burden of demonstrating its applicability. *Tuttle v Brown,* 131 Mich App 256; 346 NW2d 87 (1983). The jury's verdict indicated that defendant did not meet his burden.

We emphasize, however, that this opinion should not be read as suggesting that a ruling on the question of immunity can only be made after trial in a professional negligence case. Under MCR 2.116, if the defendant can prove that there is no material question of fact as to the lack of a recognized standard of professional conduct, then the defendant is entitled to summary judgment in his or her favor on the question of immunity.

the immunity extended to individuals is far less than that afforded governmental agencies. We believe that this was the result intended by the Legislature. *The threat of personal liability for* engaging in *ultra vires* activities or *tortiously executing one's duties may be the most effective way of deterring improper conduct."* *Ross, supra,* p 635. (Emphasis added.)

The Supreme Court's carefully drafted opinion clearly represents a desire to give vent to both considerations, which are not irreconcilable. Thus, where an individual is faced with making a decision in the absence of guidelines or duties prescribed by statute, regulation, or the common law, and the threat of a lawsuit may result in excessive caution on the part of the individual, then the individual is to be accorded immunity. However, where an individual is faced with a situation covered by guidelines or duties imposed by statute, regulation or the common law, the individual is not accorded immunity in an attempt to insure the nontortious performance of those duties. This case falls in the latter category.

Affirmed.

CYNAR, J. *(dissenting).* The Supreme Court has remanded this case to this Court for reconsideration in light of *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). The grounds for appeal are, first, whether the defendant was immune from liability for an alleged act of negligence in discharging John Patterson, and, second, whether defendant failed to warn the plaintiff's decedent of the danger to her posed by her son, in the event of his discharge.

The Court in *Ross* addressed the issue of individual immunity. The Court defined this immunity, insofar as applicable herein, as follows:

"We therefore hold that * * * [l]ower level officials, employees, and agents are immune from tort liability only when they are

"1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

*     *     *

"3) performing discretionary, as opposed to ministerial acts." (Footnote omitted.) *Ross, supra,* pp 633-634.

As to the definition of discretionary, the Court stated:

" 'Discretionary' acts have been defined as those which require personal deliberation, decision and judgment. [Citation omitted.] This definition encompasses more than quasi-judicial or policy-making authority, which typically is granted only to members of administrative tribunals, prosecutors, and higher level executives. However, it does not encompass every trivial decision, such as 'the driving of a nail,' which may be involved in performing an activity. For clarity, we would add the word 'decisional' so the operative term would be 'discretionary-decisional' acts.

"* * * An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. * * * In a nutshell, the distinction between 'discretionary' and 'ministerial' acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making.
* * *

"Many individuals are given some measure of discretionary authority in order to perform their duties effectively. Therefore, to determine the existence and scope of an individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined. The ultimate goal is to afford the officer, employee, or agent enough freedom to decide the best method of carrying out his or her duties, while insuring

that the goal is realized in a conscientious manner."
(Footnote omitted.) *Ross, supra,* pp 634-635.

There is no indication that *Fuhrmann v Hatta-way,* 109 Mich App 429; 311 NW2d 379 (1981), *lv den* 414 Mich 858 (1982), is in conflict with *Ross.* In *Fuhrmann,* the Court stated at 436-437:

"Plainly, the activities of the defendant psychiatrist are anything but ministerial. The decisions required of these persons are perhaps the ultimate in discretion. To determine the state of a person's psyche is in itself a task requiring great discretion and when this task is conjoined with the even more imposing job of resolving another's liberty, the consequent decision cannot be said to be 'ministerial' in any sense of that word.

\* \* \*

"Finally, there seems to be little doubt that medical decison-making is inherently discretionary."

Accord, *Adams v Northville State Hosp,* 131 Mich App 583, 585; 345 NW2d 207 (1983), *lv den* 422 Mich 890 (1985), *Pomilee v Detroit,* 121 Mich App 121, 125; 328 NW2d 595 (1982), *lv den* 422 Mich 890 (1985), *Knapp v Moreno,* 137 Mich App 769, 775; 359 NW2d 560 (1984).

According to the majority, there is no suggestion that defendant was not acting within the scope of his employment and within the scope of his authority or that defendant was not acting in good faith.

Whether John Patterson should have been discharged from the state mental hospital or whether there was a need to warn plaintiff's decedent involved complex medical discretionary decision-making. Since the defendant is cloaked with governmental immuntiy from liability, I respectfully dissent and support reversal.