PETERS v BAY FRESH START, INC

Docket Nos. 84782, 90360. Submitted December 3, 1986, at Lansing. Decided May 7, 1987. Leave to appeal denied, 429 Mich —.

William E. Peters, conservator of the estate of Melvin C. Jones, a legally incapacitated person, brought an action in the Bay Circuit Court against Bay Fresh Start, Inc., and Donald J. Bauer alleging against the defendants, a non-profit halfway house and a probation officer, negligence, nuisance, third-party beneficiary rights and strict liability. The complaint alleged that as a direct and proximate result of the defendants' carelessness and negligent behavior, two residents of the center, Frederick Lutz and Joseph Jacobs, were able to leave the facility, burglarize the residence of Melvin Jones and assault Jones resulting in permanent and incapacitating injuries to Jones. Donald Bauer and his supervisor, Donald Seidel, filed a motion for a protective order seeking to prevent the discovery of presentence investigation reports and records concerning the two convicts. The trial court, Patrick R. Joslyn, J., entered a written order denying the motion except to those portions of presentence reports, investigations and case histories prepared by Bauer or other probation officers regarding Jacobs and Lutz which constituted confidential communications related by Jacobs or Lutz. In Docket No. 84782, Bauer, by leave granted, and Seidel, as of right, appeal from the order. The trial court also granted Bauer summary disposition holding that Bauer was under no duty to disclose, was acting within the scope of his employment and had governmental immunity. In Docket No. 90360 plaintiff appeals from that order. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. Plaintiff's right of access to the courts was not denied by the trial court's ruling which denied plaintiff access to certain portions of presentence reports, investigations and case histo-

REFERENCES

Am Jur 2d, Civil Rights §§ 16-21, 263.

Supreme Court's views as to concurrent jurisdiction of state court over federal civil cause of action in absence of express congressional provision. 69 L Ed 2d 1136.

ries prepared by defendant Bauer or other probation officers regarding Joseph Jacobs and Frederick Lutz which constituted confidential communications related by Jacobs or Lutz.

2. MCL 791.229; MSA 28.2299, which preserves the confidentiality of all records and reports of investigations by a probation officer and all case histories of probationers, provides an absolute privilege against the disclosure of such information; there are, however, some constitutional rights which may supersede the privilege. The interests asserted by plaintiff here were deemed not to supersede the privilege. The trial court erred in Docket No. 84782 in holding that any of the probation officers' records or reports were discoverable.

3. The specific acts complained of are not Bauer's nonperformance of an evaluation, but the performance of an evaluation ending in the wrong recommendation. Bauer's actions were discretionary-decisional. The trial court properly found in Docket No. 90360 that Bauer was immune from suit as a result of governmental immunity.

The judgment in Docket No. 84782 is reversed; the judgment in Docket No. 90360 is affirmed.

1. CRIMINAL LAW — CONFIDENTIALITY OF RECORDS — PRIVILEGE AGAINST DISCLOSURE.

The statute which preserves the confidentiality of all records and reports of investigations by a probation officer and all case histories of probationers provides an absolute privilege against the disclosure of such information; however, there are some constitutional rights, i.e., the right of confrontation in criminal cases, which may supersede the privilege (MCL 791.229; MSA 28.2299).

2. GOVERNMENTAL IMMUNITY — LOWER LEVEL OFFICIALS.

The test for governmental immunity which applies to cases pending in trial or appellate courts on January 22, 1985, and to those causes of action which accrued before July 1, 1986, is: Lower level officials, employees and agents are immune from tort liability only when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial, acts.

3. GOVERNMENTAL IMMUNITY — PRISONS AND PRISONERS — PROBATION OFFICERS — HALFWAY HOUSES.

The referral or recommendation of a convict to a halfway house by a probation officer involves significant decision-making by the probation officer, thus, the performance of a referral or

recommendation evaluation may be viewed as discretionary-decisional action by the probation officer; the officer's motion for summary disposition based on governmental immunity is properly granted in an action where the performance of an evaluation ending in the wrong recommendation is alleged.

*Learman, Peters, Sarow & McQuillan* (by *Richard B. Learman* and *Richard C. Learman*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Louis J. Porter,* Assistant Attorney General, for Donald Bauer and Donald Seidel.

Before: BEASLEY, P.J., and R. B. BURNS and G. D. LOSTRACCO,* JJ.

PER CURIAM. On June 6, 1984, plaintiff, William E. Peters, conservator of the estate of Melvin C. Jones, a legally incapacitated person, filed a complaint against defendant Bay Fresh Start, Inc., a non-profit halfway house, alleging negligence, nuisance, third-party beneficiary rights and strict liability. The complaint alleged, inter alia, that as a direct and proximate result of Bay Fresh Start's carelessness and negligent behavior, two residents of the center, Frederick Lutz and Joseph Jacobs, were able to leave the facility during the early morning hours of May 16, 1982. They then proceeded to burglarize the residence of Dr. Melvin C. Jones, during which burglary Jones was assaulted and received massive, compound and depressed fractures to his skull, resulting in permanent and incapacitating injuries. It appears that the two convicts, Jacobs and Lutz, were roommates and that Lutz was employed at the time of the incident at Jones' residence as a yardman.

* Circuit judge, sitting on the Court of Appeals by assignment.

On September 10, 1984, plaintiff served subpoenas on Donald Bauer, a probation officer, and Donald Seidel, his supervisor, asking for presentence investigation reports and records concerning the two convicts. Both Bauer and Seidel filed a motion for a protective order, arguing that the records and reports were subject to a statutory privilege and, thus, could not be inquired into. On January 3, 1985, plaintiff filed his first amended complaint, adding Donald Bauer as a defendant and alleging that Bauer had breached a duty not to make the referral of felons who were overly aggressive, destructive or violent, and a duty to disclose to the center's employees the juvenile histories of convicts being evaluated by Bay Fresh Start. Specifically, the complaint alleged that Bauer knew or should have known of Jacobs' history of aggressive, destructive and violent behavior, especially his juvenile record, and that such information was in the presentence information report. Jacobs was serving a sentence for larceny from a motor vehicle at the time he began participating in the Bay Fresh Start program. On March 1, 1985, plaintiff filed a second amended complaint, alleging that Bauer breached his duty by not evaluating Jacobs or by misleading Bay Fresh Start as to his knowledge of Jacobs' suitability for the program.

On April 16, 1985, the Bay Circuit Court entered a written order denying the motion for a protective order, except as to those portions of presentence reports, investigations and case histories prepared by Bauer or other probation officers regarding Joseph Jacobs and Frederick Lutz which constituted confidential communications related by Jacobs or Lutz. The court further ordered that it would make an in camera inspection of portions of the reports to determine whether the material was

privileged and the further applicability of the order. The court also certified the order for appeal and stayed all discovery proceedings regarding the contested material. This Court granted Bauer leave to appeal on this issue, which constitutes the subject matter of Docket No. 84782. Donald Seidel appeals as of right from the same order.

In an opinion dated December 18, 1985, the trial court granted Bauer summary disposition pursuant to MCR 2.116(C)(7) and (8), holding that Bauer was under no duty to disclose, was acting within the scope of his employment and had governmental immunity from tort liability. Plaintiff appealed from this order, forming the subject matter of Docket No. 90360. On April 8, 1986, these appeals were consolidated for purposes of appeal.

In Docket No. 84782, defendant Bauer argues that the trial court should have held that *all* of the presentence information reports and records were privileged and not subject to discovery, rather than holding that only those parts which constituted confidential communications were privileged. Bauer's argument rests largely on MCL 791.229; MSA 28.2299, which provides:

All records and reports of investigations made by a probation officer, and all case histories of probationers shall be privileged or confidential communications not open to public inspection. Judges and probation officers shall have access to the records, reports, and case histories. The probation officer, the assistant director ·of probation, or the assistant director's representative, shall permit the attorney general, the auditor general, and law enforcement agencies to have access to the records, reports, and case histories. The relation of confidence between the probation officer and probationer or defendant under investigation shall remain inviolate.

The language of this statute would seem to be absolute, barring disclosure and, therefore, discovery of the documents sought by plaintiff. As plaintiff points out, however, there are cases which carve out exceptions to this rule. For example, in *People v Terry Burton*,[1] this Court held that testimony regarding the substance of a phone conversation between a probation officer and a defendant, made outside of the scope of the officer's statutory responsibility, was admissible at trial. The Court reasoned that the statute expressly limits the privilege to records, reports and case histories, and that the confidence stated to exist between the probation officer and probationer only applied to probationers and defendants "under investigation."

In *People v Rohn*,[2] this Court reversed a defendant's conviction because, inter alia, the trial court had withheld presentence reports of three prosecution witnesses, all accomplices in the crime. The defendant had sought access to those reports for impeachment purposes. The Court said of the statute preserving the confidentiality of presentence reports that it "may directly conflict with the equally protected rights of confrontation and impeachment through prior inconsistent statements. . . . Where there is such a conflict, we believe that confidentiality must give way to other stronger interests." The Court went on to say that impeachment because of bias and attacking the credibility of a witness' information are both so necessary to the right of confrontation that they outweigh statutory confidentiality. The Court concluded, however:

This does not mean that defendants should re-

---

[1] 74 Mich App 215, 225-226; 253 NW2d 710 (1977).

[2] 98 Mich App 593, 599-600; 296 NW2d 315 (1980).

ceive wholesale access to the confidential records of others. We hold only that when records of prior inconsistent statements of witnesses are necessary for effective cross-examination, they should be made available to the defendant. An *in camera* inspection procedure should be utilized by the court to limit disclosure to those statements materially inconsistent with the witness's testimony.[3]

Plaintiff asserts that access to the court system to seek redress for civil wrongs is a fundamental constitutional right, citing both US Const, Am XIV, and *Gale v Providence Hospital*.[4] While there may be some limited merit in this assertion, we do not believe that plaintiff's right of access to the courts was denied by the ruling regarding the confidentiality of the material sought. Plaintiff has access to the courts; what he does not have is unrestricted access to all information of every kind, no matter how private, which he believes might bolster his case.

We think this case is more analogous to *Havens v Roberts*,[5] in which an insurance company sought information included in a probation officer's report in order to avoid liability for the actions of its insured who had committed a crime. The Court held that under the statute the probation officer's files were absolutely privileged and could not be the subject of discovery. The insurance company was limited to presenting admissible nonprivileged evidence to support its allegations.

Like the *Havens* Court, we believe that the language of the statute is absolute. We agree with *Rohn, supra,* that there are some constitutional rights which may supersede the privilege, but the

---

[3] *Id.* at 600.

[4] 118 Mich App 405, 411; 325 NW2d 439 (1982).

[5] 139 Mich App 64, 67-68; 360 NW2d 183 (1984).

interests asserted by plaintiff here hardly compare with the right to confrontation in criminal cases. It is, of course, possible that the Legislature intended only to protect probationers and informants, so that the privilege would not apply when neither a probationer nor an informant, but only a probation officer, requested nondisclosure. The language of the statute itself contains no such proviso, however. We reverse the trial court in Docket No. 84782 insofar as it held that any of the probation officer's records or reports were discoverable.

As to the grant of summary disposition appealed from in Docket No. 90360, we note that the trial court reached its decision both because defendant Bauer had no duty to disclose and because he had governmental immunity. If either of these grounds is sound, we must affirm that decision.

The test for governmental immunity of lower-level officials, employees or agents was defined by the Supreme Court in *Ross v Consumers Power Co (On Rehearing)*.[6] Since that time, 1986 PA 175 was enacted, specifying a new standard for such immunity in its revision of MCL 691.1407; MSA 3.996(107). It is clear, however, that *Ross,* rather than 1986 PA 175, applies to cases pending in trial courts or on appeal on January 22, 1985, and to those causes of action which accrued before July 1, 1986.[7] This is such a case, so that we must apply *Ross* rather than the new statute.

*Ross* defined the test as follows:

> Lower level officials, employees, and agents are immune from tort liability only when they are
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

[6] 420 Mich 567; 363 NW2d 641 (1984).

[7] *Hyde v University of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847 (1986).

2) acting in good faith; and
3) performing discretionary, as opposed to ministerial acts.[8]

As in most cases, there is little difficulty disposing of the first two parts of the test. Plaintiff has alleged that Bauer's actions occurred as part of his responsibilities as a probation officer. Neither of plaintiff's amended complaints alleged bad faith on Bauer's part, and even on appeal plaintiff merely says that Bauer's good faith "is in issue" because Bauer allegedly told the director of Bay Fresh Start that there was no reason Jacobs should not be in the program. As is often the case, the difficult part of the analysis centers on whether Bauer was performing a discretionary or ministerial act. There is seldom an obvious answer to this question, the determination of which often depends on the characterization of the activity involved. In one sense, the more narrowly the activity is defined, the more likely it is to be held to be ministerial. The more broadly it is defined, the more likely that it will be held to be discretionary. To help guide our discussion of this issue, we return to the language of *Ross:*

> "Discretionary" acts have been defined as those which require personal deliberation, decision, and judgment. . . . This definition encompasses more than quasi-judicial or policy-making authority, which typically is granted only to members of administrative tribunals, prosecutors, and higher level executives. However, it does not encompass every trivial decision, such as "the driving of a nail," which may be involved in performing an activity. For clarity, we would add the word "decisional" so the operative term would be "discretionary-decisional" acts.

---

[8] *Ross, supra* at 633-634.

"Ministerial" acts have been defined as those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. . . . We believe that this definition is not sufficiently broad. An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a non-tortious manner. In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making. Here too, for clarity, we would add the word "operational" so the operative term would be "ministerial-operational" acts.

Many individuals are given some measure of discretionary authority in order to perform their duties effectively. Therefore, to determine the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined. The ultimate goal is to afford the officer, employee, or agent enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner. [Citations omitted.][9]

Plaintiff's second amended complaint is couched in terms suggesting that Bauer did not evaluate Jacobs and then misled Bay Fresh Start regarding his knowledge of Jacobs' suitability. Plaintiffs first amended complaint, however, in language not changed by the second amended complaint, alleged that the information necessary for a full evaluation, specifically Jacobs' criminal and juvenile history, was present in the presentence investigation

---

[9] *Ross, supra* at 634-635.

report which Bauer himself prepared. It is, therefore, clear that the specific acts complained of are not Bauer's nonperformance of an evaluation, but the performance of an evaluation ending in the wrong recommendation. That is, plaintiff thinks that Bauer, given the information available to him, should have told Bay Fresh Start that Jacobs was not suitable for placement there, rather than that he was suitable.

There have been several cases attempting to clarify the line between ministerial-operational acts and discretionary-decisional acts. In *Brown v Northville Regional Psychiatric Hospital*,[10] for example, this Court held that medical decisions are discretionary in nature, while execution of those decisions is a ministerial act. In *Justice v Michigan*,[11] this Court held that the failure of individual DSS employees to comply with an administrative order of a DSS hearing officer would have constituted ministerial acts, had those individuals been named as defendants. The Supreme Court later modified the decision to allow an amended complaint against those individual employees.[12]

It is also reasonably well established that the failure to follow established procedures or policies is a ministerial act in certain circumstances. For example, the Supreme Court in *Bandfield v Wood*[13] said that the failure to follow established procedures in supervising others and in seeing that medicines in a prison's first-aid area were not tampered with both amounted to ministerial acts. In *Rathbun v Starr Commonwealth for Boys*,[14] a case with certain similarities to the instant one,

---

[10] 153 Mich App 300, 307; 395 NW2d 18 (1986).

[11] 145 Mich App 352, 359; 377 NW2d 417 (1985).

[12] 425 Mich 867 (1986).

[13] 421 Mich 774, 775-776; 364 NW2d 280 (1985).

[14] 145 Mich App 303; 377 NW2d 872 (1985).

DSS employees processed an exception request allowing a juvenile offender to be placed in the Starr Commonwealth for Boys. The plaintiff alleged that they failed to follow DSS regulations requiring placement of the particular offender in another facility and that they failed to obtain full information about the offender and to include that information in the request. The *Rathbun* Court said that the decision to place the offender at the facility was a discretionary one, but that the acts of placing proper information on the request form and assuring that adequate information was acquired in processing the exception request were ministerial acts. More particularly, the Court pointed out that the plaintiff was not alleging that the defendants had made the wrong decision, but, rather, that, under established policy, they had no discretion to approve the request.

In this case, plaintiff believes that Bauer made the wrong decision in concluding that Jacobs was an appropriate candidate for Bay Fresh Start. While he does allege that one of the "certain criteria" agreed to between Bay Fresh Start and the Department of Corrections was not to refer felons who were overly aggressive, destructive or violent, he does not allege that these "criteria" left Bauer completely without discretion. As a matter of fact, the very use of the terms "criteria" and "overly aggressive, destructive or violent" imply the use of Bauer's best judgment in making the determination, rather than a rigid set of rules which allow for no decision-making on an individual basis. Under *Rathbun,* we believe that Bauer's actions were discretionary-decisional, rather than ministerial-operational. We also believe that this is a sound interpretation of *Ross, supra,* because the referral or recommendation of a convict to a half-

way house indeed involves significant decision-making, rather than involving the execution of a decision which might entail some minor decision-making.

There are, however, some anomalous cases of this Court which would seem to hold that negligence always implies a ministerial act. In *Davis v Lhim (On Remand)*,[15] two members of this Court held that a psychiatrist's failure to exercise reasonable care in the discharge of a patient and the failure to warn the patient's parents of the danger posed by the patient were not discretionary acts, but ministerial ones. The *Davis* majority reasoned that the Supreme Court did not intend to shield from liability persons who were faced with doing something permissible or something impermissible "merely because it was a theoretical option."[16] The majority held that "[a] professional, otherwise liable because he or she has deviated from the appropriate standard of care, cannot contend that he or she had discretion to violate that standard." Thus, the majority concluded that the psychiatrist was required to be "obedient" to a standard and perform his duties consistent therewith, having "no or little choice" in the matter.[17] Negligent actions of professionals appear, under that reasoning, to be per se ministerial. Judge CYNAR dissented, arguing that the decisions of whether to discharge a patient from a mental hospital or to warn his parents involved complex medical discretionary decision-making. He cited *Fuhrmann v Hattaway*[18] for the proposition that the decisions required of psy-

[15] 147 Mich App 8; 382 NW2d 195 (1985).

[16] *Id.* at 12.

[17] *Id.* at 15.

[18] 109 Mich App 429, 436-437; 311 NW2d 379 (1981), lv den 414 Mich 858 (1982).

chiatrists "are perhaps the ultimate in discretion."[19]

*Davis, supra,* on which leave to appeal has been granted by the Supreme Court, has been cited with approval in *Vitale v Reddy*[20] and the recent case of *Bolton v Jones.*[21] In *Bolton,* the plaintiff alleged that both a social worker and a physician had failed to *properly* inspect, interview and investigate the parent's psychiatric history, assess stability, or make reports to the court about the danger regarding their recommendations that a child be kept in her parents' home. The child later was beaten to death by her father. The *Bolton* Court went even further than the *Davis* majority, holding that the rule that no one has "discretion" to violate a standard of care applies to professionals and nonprofessionals alike.[22]

It seems to us that *Bolton* and *Davis,* if taken together, lead to a conclusion that violation of a standard of care is never discretionary under *Ross.* This is as much as saying that negligent lower level officials and government employees can never, regardless of the character of their actions, have governmental immunity. If this were the case, then no tort suit against any government employee would ever fail for immunity reasons, as all tort suits allege negligence except those alleging strict liability. In such a circumstance, it would seem superfluous for the Supreme Court to have spent several paragraphs in *Ross* describing the nature of individual immunity.

As the finding of governmental immunity bars any suit in tort against Bauer for the actions complained of, we do not address the question of

---

[19] *Davis, supra* at 19.

[20] 150 Mich App 492, 505; 389 NW2d 456 (1986).

[21] 156 Mich App 642; 401 NW2d 894 (1986).

[22] *Id.* at 649.

whether Bauer owed a duty to Jones, nor whether Bauer's action or inaction was the proximate cause of Jones' injuries.

The judgment of the trial court in Docket No. 84782 is reversed; the judgment of the trial court in Docket No. 90360 is affirmed.