## CUSTARD v McCUE

Docket No. 61481. Submitted November 17, 1982, at Detroit.—Decided April 5, 1983.

Reginald Custard was killed when the vehicle of which he was an occupant crossed the centerline while southbound on Connor in the City of Detroit and collided with an oncoming automobile and truck. The Custard vehicle was, at the time of the collision, traveling at a high rate of speed with its headlights off, in an attempt to elude pursuing Detroit police officers. Plaintiff Dorothy Custard, administratrix of the estate of Reginald Custard, brought a wrongful death action in the Wayne Circuit Court against defendants Thomas McCue, Alfred Galea, Gregory Smith, Daniel Folcarelli, Roger Harrah, and Val Wittner, Detroit police officers who were involved in some way in the pursuit of the fleeing automobile. The court, John R. Kirwin, J., granted defendants' motion for summary judgment. Plaintiff appealed. *Held:*

The proper test for determination of whether a government employee is protected by governmental immunity from tort liability is whether the employee was acting within the scope of his employment when committing the allegedly tortious act. The distinction between ministerial and discretionary acts is irrelevant.

Affirmed.

M. F. CAVANAGH, P.J., concurred but believes that the discretionary-ministerial distinction is still applicable to questions of governmental immunity for public employees' negligence.

### OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES.

The proper test for determination of whether a government employee is protected by governmental immunity from tort

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 45, 85.

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 45, 90.

liability is whether the employee was acting within the scope of his employment when committing the allegedly tortious act; the distinction between ministerial and discretionary acts is irrelevant.

CONCURRENCE BY M. F. CAVANAGH, J.

2. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES — DISCRETIONARY-MINISTERIAL TEST.

*Governmental immunity does not shield a public employee from liability for acts outside the scope of his authority, including intentional torts, or for ministerial acts negligently done; it does protect from liability for negligent discretionary acts.*

*Thurswell & Chayett, P.C.* (by *A. Jeffery Winston*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Martin Lucow*), for defendants.

Before: M. F. CAVANAGH, P.J., and R. B. BURNS and CYNAR, JJ.

R. B. BURNS, J. Plaintiff appeals the trial court's grant of the defendants' motion for summary judgment based on governmental immunity.

In the early morning hours of May 24, 1977, officers Michael Germini and Percy Moultrie were patrolling in a scout car when they received a radio report of a "rape in progress". Proceeding to the apartment building where the report had originated, Moultrie heard a man yell that the car had just gone down an alley and Moultrie observed a white Pontiac with its headlights off enter the street. The man in the apartment shouted that the Pontiac was the car that was the basis for the report to the police. Germini attempted to wave the car to the curb with a flashlight, but the driver disregarded his signal. Officers McCue and Galea arrived at the building and immediately began to pursue the fleeing Pontiac.

Germini and Moultrie returned to their vehicle but were unable to keep up with the suspects. According to Moultrie, the fleeing vehicle did not heed any traffic signals or signs, did not use operating lights and approached speeds of 80 to 100 miles per hour through the City of Detroit. Every police vehicle participating in the chase, including the car in which Germini and Moultrie rode, used oscillating roof lights, vehicle headlights, and sirens throughout the pursuit. Moultrie, driving the patrol car during the chase, slowed at all intersections and exercised additional diligence to avoid endangering innocent motorists and pedestrians. Moultrie observed that each police vehicle was taking similar precautions.

Officers Gregory Smith and Daniel Folcarelli were patrolling in a scout car when they received the "rape in progress" report. A further radio report advised that officers were in pursuit of the Pontiac. Moving to intercept the fleeing Pontiac, Smith noted that traffic which was exiting from the Detroit City Airport would be in the path of the fleeing vehicle. Folcarelli and Smith positioned their patrol car, with headlights and oscillating lights on, across the exit of the airport to prevent airport traffic from driving into the path of the fleeing vehicle.

Both officers exited from their vehicle and stood on the side street. The Pontiac was observed by Smith proceeding at a high rate of speed southbound on Conner without operating lights, pursued by a police vehicle with siren and dome light operating. As the Pontiac approached the location of their stopped patrol car, it swerved toward Folcarelli and Smith in what appeared to Smith to be an attempt to strike both them and their car. Folcarelli then fired one shot from a police depart-

ment 12-gauge shotgun and both officers ran for cover. The Pontiac veered left and continued south on Conner. It did not appear to Smith that the shot struck either the vehicle or the occupants of the Pontiac. In fact, the shot struck a building across the street from the officer's position, breaking a window.

Sergeant Ralph P. Baumgart stated in his report that scout car 15-93 gave information over the air that the passenger in the chased vehicle was climbing into the back seat and appeared as if he was getting ready to shoot at the pursuing police vehicles. The report said that as the chase continued south on Conner toward Gratiot, at speeds approaching 100 miles per hour, Folcarelli and Smith were standing next to their scout car as the Pontiac approached them. When it got closer, it veered towards the officers standing in the street and Folcarelli fired one shot in self defense at the suspect vehicle. The shot was fired without taking effect. After investigating the shooting incident, Baumgart indicated in his report that Folcarelli was justified in the use of his firearm as outlined in police department procedure because he fired in defense to protect himself and his partner from serious bodily harm or death. Baumgart recommended that the matter be considered closed, and the lieutenant who reviewed the matter agreed that Folcarelli acted properly.

Thirteen blocks south of where Folcarelli had fired the shot, the Pontiac struck a Ford Mustang and, further south on Conner, the Pontiac struck a truck travelling in the opposite direction. The Pontiac finally came to rest after striking a fire hydrant, and both occupants died in the accident.

The autopsy report revealed that plaintiff's decedent suffered injuries as a result of his head going

through the windshield. Both the occupants of the car had consumed alcohol prior to the accident. Also, further investigation at the scene of the report failed to indicate that a rape had taken place.

Plaintiff claims that the trial court erred in granting summary judgment to defendants based on governmental immunity. Claiming that the chase by police and the shot fired by Folcarelli were reckless or negligent ministerial acts, plaintiff avers that defendant is not immune under MCL 691.1407; MSA 3.996(107). We regard the distinction between "ministerial" and "discretionary" acts as irrelevant, and affirm the trial court. We quote with approval the Court's opinion in *Shwary v Cranetrol Corp,* 119 Mich App 736; 326 NW2d 627 (1982):

"In *Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981), in a well-reasoned opinion, Judge BRONSON pointed out that a majority of the Supreme Court has apparently rejected the 'ministerial-discretionary' standard. Thus, reviewing courts need not decide whether employees were performing duties that were discretionary in nature in order to determine whether the employees are entitled to governmental immunity. Rather, 'the proper test to apply is merely whether the [employees] were acting within the scope of their employment. If so, they cannot be held liable." *Id.,* 698.

The defense of governmental immunity, as codified in MCL 691.1407; MSA 3.996(107), provides immunity to an agency engaged in a governmental function. It is obvious that the police officers were engaged in a governmental function. See, *e.g.,* MCL 117.3(j); MSA 5.2073(j).

Because the defendants acted within the scope of their employment in the exercise of a governmental function, they were entitled to governmental

immunity and the trial court's order of summary judgment was correct.

Affirmed.

CYNAR, J., concurred.

M. F. CAVANAGH, P.J. *(concurring)*. I concur with the majority's determination that the defendants were acting within the scope of their employment in the exercise of a governmental function. I disagree, however, with the opinion's abandonment of the "ministerial-discretionary" standard. I agree with the thorough discussion of this standard by our colleague, Judge MICHAEL J. KELLY, in the case of *Layton v Quinn,* 120 Mich App 708; 328 NW2d 95 (1982). Applying that standard to this case, however, would still result in affirmance as the acts of the defendants here involved were discretionary and protected by the doctrine of governmental immunity. See *Fiser v City of Ann Arbor,* 107 Mich App 367; 309 NW2d 552 (1981).