KNAPP v MORENO

Docket No. 72900. Submitted May 2, 1984, at Lansing.—Decided
October 1, 1984. Leave to appeal applied for.

Judy Ann Knapp voluntarily admitted herself to the Ypsilanti
Regional Psychiatric Hospital. She was interviewed by Dr. A.
Moreno, M.D., who noted that Knapp had a history of drug and
alcohol abuse, multiple psychiatric hospitalizations and numer-
ous suicide attempts. After interviewing Knapp, Moreno be-
lieved that she suffered from acute depression, as well as some
adverse physiological symptoms. He had her placed in the
hospital's intensive care unit for treatment of dehydration. A
feeding tube was inserted into Knapp's throat. Two days later,
she was transferred to St. Joseph Mercy Hospital in a coma-
tose, unresponsive state, with aspiration pneumonia, adult
respiratory distress syndrome and a temperature of 103 de-
grees. Her trachea allegedly contained large amounts of rem-
nants from the tube feeding and purulent material. She died
the same day. Richard Knapp, personal representative of the
estate of Judy Ann Knapp, deceased, filed suit against Dr. A.
Moreno, M.D., in Washtenaw Circuit Court charging that the
decedent should have been subjected to thorough medical diag-
nostic tests on the date of admission and that had this been
done she would have been transferred to a facility better
equipped to treat her medical problems. He also claimed that
the decedent was improperly treated with the feeding tube and
that the tube had been negligently moved during treatment.
Defendant moved for summary judgment on the basis of gov-

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading §§ 71 et seq., 230 et seq.
[2] 61A Am Jur 2d, Pleading §§ 81, 82.
57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 15,
310.
72 Am Jur 2d, States, Territories, and Dependencies § 99.
[3] 63A Am Jur 2d, Public Officers and Employees §§ 359, 361, 366.
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27 et
seq.
63A Am Jur 2d, Public Officers and Employees § 365.
[5, 6] 40 Am Jur 2d, Hospitals and Asylums §§ 2, 20-24.

ernmental immunity. The court, Henry T. Conlin, J., granted the defendant's motion, rejecting plaintiff's contention that medical treatment rendered by a state psychiatric hospital was not a governmental function and ruling that defendant was acting within the scope of his employment at the time of the alleged malpractice and was therefore cloaked with official immunity. Plaintiff appeals. *Held:*

There was a sufficient nexus between the medical care services of the Ypsilanti Regional Psychiatric Hospital and its function in treating the mentally ill, a recognized governmental function, so as to entitle persons performing the medical services in the scope of their employment to immunity. Since plaintiff never alleged that defendant was not acting within the scope of his employment, the trial court correctly granted summary judgment in favor of defendant.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM.

A motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be granted is to be tested by the pleadings alone; the motion tests the legal basis of the complaint, not whether it can be factually supported (GCR 1963, 117.2[1]).

2. GOVERNMENTAL IMMUNITY — PLEADING — COMPLAINT.

A complaint must include facts in avoidance of governmental immunity where governmental immunity is an issue.

3. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES.

Public employees are without statutory immunity from liability for torts, but are protected by an immunity arising at common law.

4. GOVERNMENTAL IMMUNITY — SCOPE-OF-EMPLOYMENT TEST.

The scope-of-employment test for determining whether governmental immunity applies in any given case focuses, once it is determined that the government agency-employer was engaged in the exercise or discharge of a governmental function, upon whether the defendant employee acted within the scope of his employment.

5. STATES — HOSPITALS — MENTAL HEALTH.

The operation of a state mental hospital is a governmental function.

6. GOVERNMENTAL IMMUNITY — HOSPITALS — MENTAL HEALTH —
MEDICAL CARE.

> The immunity from liability for torts accorded state mental
> hospitals may be extended to ancillary medical care activities
> of those hospitals.

*Jacobs & Engle, P.C.* (by *Jerry M. Engle),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patrick J. Devlin,* Assistant Attorney General, for defendant.

Before: SHEPHERD, P.J., and CYNAR and S. D. BORMAN,* JJ.

CYNAR, J. Plaintiff appeals as of right from a circuit court opinion and order granting defendant's motion for summary judgment, GCR 1963, 117.2(1), for failure of plaintiff to plead facts in avoidance of governmental immunity.

On February 12, 1981, plaintiff's decedent was admitted to the Ypsilanti Regional Psychiatric Hospital (YRPH) as a voluntary patient. She was interviewed on that date by defendant, a YRPH staff psychiatrist. Defendant noted a patient history of drug and alcohol abuse, multiple psychiatric hospitalizations and numerous suicide attempts. Defendant believed that plaintiff's decedent suffered from acute depression.

Plaintiff's decedent also manifested some adverse physiological symptoms and was placed by defendant in the hospital's intensive care unit for treatment of dehydration.

Plaintiff alleges that defendant was negligent in his management of plaintiff's case. Specifically, he charges that the decedent should have been subjected to thorough medical diagnostic tests on the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

date of admission and that had this been done the decedent would properly have been transferred to a facility better equipped to treat her medical problems. Plaintiff also alleges that his decedent was improperly treated with a feeding tube and that during the course of treatment the tube was negligently moved. On February 14, 1981, Mrs. Knapp was transferred to St. Joseph Mercy Hospital in a comatose, unresponsive state, with aspiration pneumonia, adult respiratory distress syndrome and a temperature of 103 degrees. Her trachea allegedly contained large amounts of remnants from the tube feeding and purulent material. She died the same day. Defendant stated, in answer to interrogatories, that he did not treat Mrs. Knapp's physical problems, that he did not know who inserted the feeding tube in her, and that he was not involved in the decision to transfer Mrs. Knapp to St. Joseph Mercy Hospital.

Upon filing of plaintiff's complaint, defendant moved for summary judgment grounded upon governmental immunity. In granting defendant's motion, the court rejected plaintiff's contention that medical treatment rendered by a state psychiatric hospital was not a governmental function. The court further ruled that defendant was acting within the scope of his employment at the time of the alleged malpractice and hence was cloaked with official immunity.

A motion for summary judgment under GCR 1963, 117.2(1), alleging failure to state a claim upon which relief may be granted, is to be tested on the pleadings alone. The motion tests the legal basis of the complaint, not whether it can be factually supported. *Mosqueda v Macomb County Youth Home,* 132 Mich App 462, 474; 349 NW2d 185 (1984); *Partrich v Muscat,* 84 Mich App 724,

729; 270 NW2d 506 (1978). Where governmental immunity is involved, a plaintiff must plead facts in avoidance of immunity. *Martin v Michigan,* 129 Mich App 100; 341 NW2d 239 (1983); *Armstrong v Ross Twp,* 82 Mich App 77, 82; 266 NW2d 674 (1978). In this case we are concerned only with Dr. Moreno and hence with government employee immunity; other parties alleged to have been negligent are named defendants in a companion case brought in the Court of Claims.

Our first task is to identify the appropriate test governing individual immunity. Public employees are without statutory immunity, *Tocco v Piersante,* 69 Mich App 616, 621; 245 NW2d 356 (1976), *lv den* 399 Mich 882 (1977), but are protected by an immunity arising at common law, *Lockaby v Wayne County,* 406 Mich 65, 78; 276 NW2d 1 (1979); *Fisher v Mental Health Dep't,* 128 Mich App 72, 81; 339 NW2d 692 (1983). At this writing the Court of Appeals remains split on whether to use the discretionary/ministerial test or the scope-of-employment test. Compare *Fisher, supra,* and *Layton v Quinn,* 120 Mich App 708; 328 NW2d 95 (1982), with *Young v Ann Arbor (On Rehearing),* 125 Mich App 459; 336 NW2d 24 (1983), and *Lewis v Beecher School System,* 118 Mich App 105; 324 NW2d 779 (1982). The theoretical justifications underlying these competing tests have been extensively explored, and further debate would yield no dividends. It is our opinion that the scope-of-employment test should be used. Under this test, once it is determined that the government agency-employer was engaged in the exercise or discharge of a governmental function, the question becomes whether the defendant employee acted within the scope of his employment. *Chivas v Koehler,* 124 Mich App 195, 201; 333 NW2d 509

(1983). See also *Danley v Yuzon,* 128 Mich App 228; 340 NW2d 79 (1983); *Custard v McCue,* 124 Mich App 612; 335 NW2d 104 (1983); *Mason v Rosen,* 124 Mich App 204; 333 NW2d 513 (1983).

Initially, we must determine whether in providing medical treatment for plaintiff's decedent the YRPH was engaged in the exercise or discharge of a governmental function. It has been established that the operation of a state mental hospital is a governmental function. *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978); *Martin, supra,* pp 106-107. However, this Court must direct its attention to the specific activity which allegedly gave rise to the injury. *Bokano v Wayne-Westland Community Schools,* 114 Mich App 79; 318 NW2d 613 (1982). This activity is *medical* diagnosis and treatment. It is plaintiff's position that this activity should not be cloaked with immunity, even when performed in a state mental hospital, because it is not an activity that could effectively be accomplished only by the government. *Fisher, supra,* p 80. See also *Feliciano v Dep't of Natural Resources,* 97 Mich App 101; 293 NW2d 732 (1980).

We find a sufficient nexus between the medical care services of the YRPH and its function in treating the mentally ill, a recognized governmental function, so as to entitle persons offering the medical care services in the scope of their employment to immunity. Analytically helpful is *Rouse v Michigan,* 109 Mich App 21; 311 NW2d 144 (1981), *lv den* 414 Mich 872 (1982), cited by defendant. There the plaintiff, a resident of the Michigan School for the Deaf, was allegedly assaulted by other students while in his dormitory room. The plaintiff sought to avoid the immunity defense by arguing that the residential operation of the

school was not a governmental function. The *Rouse* Court held that the operation of dormitories, not inherently a governmental function, was sufficiently related to the educational operation of the school so as to share its immunity.

In our case, because mental and physical pathology may sometimes be interrelated, and because mentally ill persons are as prone as other mortals to incidental serious illness or traumatic injury, we extend the immunity accorded state mental hospitals to the ancillary medical care activities of those hospitals.

Having found that a governmental function was being exercised, the question is merely whether defendant was acting within the scope of his employment. In this case plaintiff's complaint does not allege that defendant's actions were outside the scope of his employment.

The judgment of the trial court was correct. Although not essential to our decision, we believe that defendant's actions would be immune even if the discretionary/ministerial test were applied. See *Adams v Northville State Hospital,* 131 Mich App 583, 585; 345 NW2d 207 (1983).

Affirmed.