MAURER v McMANUS

Docket No. 90248. Submitted March 24, 1987, at Detroit. Decided June 16, 1987. Leave to appeal applied for.

Louis W. Maurer, individually and as next friend of Mark Maurer, and Carol Maurer brought actions in the Washtenaw Circuit Court and the Court of Claims against Michael Mc-Manus, M.D., Children's Psychiatric Hospital, the University of Michigan Hospital, the University of Michigan Board of Regents, and certain employees or staff members of Children's Psychiatric Hospital. Plaintiffs alleged (1) malpractice, (2) negligence, (3) gross negligence, (4) assault, (5) deprivation of civil rights, (6) intentional infliction of emotional distress, (7) breach of implied contract, (8) defective building and supervision, (9) nuisance, (10) civil conspiracy, and (11) loss of consortium in connection with the alleged sexual assault upon Mark Maurer by another patient while Mark Maurer was a patient at Children's Psychiatric Hospital. The actions were consolidated for trial in the circuit court, where defendants' motion for summary disposition of plaintiffs' claims of medical malpractice and negligence on the basis of governmental immunity was subsequently granted, Ross W. Campbell, J. The circuit court also struck, on its own initiative, plaintiffs' allegations in support of their other claims, ruling that the remaining claims were redundant and poorly drawn. Plaintiffs appealed.

The Court of Appeals *held*:

1. The rules articulated in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984), with regard to a governmental agency's immunity from tort liability do not apply in this case to the defendant governmental entities. In *Hyde v University of Michigan Bd of Regents*, 426 Mich 223 (1986), the Supreme Court held that the rules articulated in *Ross* apply to cases commenced after January 22, 1985, the date the *Ross* opinion

REFERENCES

Am Jur 2d, Municipal, School, and State Tort Liability §§ 27 *et seq.*; 53 *et seq.*; 89.

Comment note.—Municipal immunity from liability for torts. 60 ALR2d 1198.

Immunity from liability for damages in tort of state or governmental unit or agency in operating hospital. 25 ALR2d 203.

was issued, and to those cases pending either in trial or appellate courts on January 22, 1985, in which a governmental immunity issue was properly raised and preserved. In this case, the actions were filed before January 22, 1985, and while the case remained pending in the trial court through January 6, 1986, the issue of governmental immunity was not properly raised.

2. The Court of Appeals has held in a case decided prior to *Ross* that the operation of the University of Michigan Hospital did not constitute a governmental function which was entitled to immunity. Thus, the defendant governmental entities were not entitled to immunity and the trial court erred in granting summary disposition in favor of these defendants.

3. The issue of governmental immunity for low-level officials, employees and agents was not before the *Hyde* Court, and Michigan had no pre-*Ross* law of officer immunity. Thus, with respect to the individual defendants in this case, the rules articulated in *Ross* regarding officer immunity apply. Those rules provide in part that immunity for tort liability is provided to lower-level officials, employees, and agents when they are performing discretionary, as opposed to ministerial acts. The staff of a psychiatric hospital may exercise considerable judgment or deliberation in deciding whether to provide inpatient care and what the nature of the care, i.e., the treatment plan, will be. However, once the decision has been made to provide such care, it must be carried out in a conscientious manner. Plaintiffs have properly pled that the alleged negligent acts of the individual defendants occurred in the course of ministerial duties. The trial court therefore erred in granting summary disposition on the ground of governmental immunity in favor of the individual defendants.

4. In view of Michigan's liberal rule of amended pleadings and a motion by plaintiffs to amend their pleadings, the trial court abused its discretion in striking plaintiff's other claims without conducting a hearing.

Reversed and remanded.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL AGENCIES.

The rules articulated in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984), apply to all cases commenced after January 22, 1985, and to those cases pending either in trial or appellate courts on January 22, 1985, in which a governmental immunity issue was properly raised and preserved.

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — TORT LIABILITY.

Lower-level governmental officials, employees, and agents are

immune from tort liability only when they are: (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial acts.

3. GOVERNMENTAL IMMUNITY — PSYCHIATRIC HOSPITAL STAFFS — TORT LIABILITY.

The staff of a psychiatric hospital owned and operated by the state may exercise considerable judgment in deciding whether to provide inpatient care and what the nature of the care, i.e., the treatment plan, will be; however, once the decision has been made to provide such care, it must be carried out in a conscientious manner; thus, in a case where a patient alleges that repeated complaints of physical or sexual abuse upon him by another patient were ignored by the hospital staff, a trial court may not grant summary disposition on the basis of governmental immunity in favor of defendant hospital staff members.

4. PLEADING — STRIKING OF PLEADINGS — COURTS — COURT RULES.

A trial court abuses its discretion in striking, on its own initiative, claims in a plaintiff's complaint on the basis of a court rule allowing a trial court to strike a party's pleading where the plaintiff had filed a motion to amend his pleadings and no hearing was held prior to the striking of the claims (MCR 2.115[B]).

*Robert D. Mouradian,* for plaintiffs.

*Feikens, Foster, Vander Male & DeNardis, P.C.* (by *Dennis J. Mendis* and *L. Neal Kennedy*), for defendants.

Before: WAHLS, P.J., and R. M. MAHER and J. T. KALLMAN,* JJ.

R. M. MAHER, J. Plaintiffs appeal as of right from the January 6, 1986, order of the Washtenaw Circuit Court granting defendants' motion for summary disposition on plaintiffs' claims of medical malpractice and negligence pursuant to MCR

---

* Circuit judge, sitting on the Court of Appeals by assignment.

2.116(C)(7), immunity granted by law. Plaintiffs also appeal that aspect of the circuit court's order striking, on its own motion pursuant to MCR 2.115(B), plaintiffs' other claims not subject to governmental immunity.

## I. FACTS

Plaintiffs' claims arise out of the care and treatment provided to Mark Maurer while he was an inpatient at Children's Psychiatric Hospital, a division of the University of Michigan Hospital. The individually named defendants were staff members at the hospital while Mark Maurer was a patient.

The facts, as set forth in the complaint, are as follows. Mark was an inpatient at Children's Psychiatric Hospital from July 7, 1981, until May of 1982. He was eight years old at the time of his admission. In the course of his treatment as an inpatient, Mark was repeatedly threatened and sexually assaulted by a fellow patient named "Billy." Billy was a twelve-year-old resident in the same ward. Defendants knew that sexual assaults had taken place on the ward and were aware that Billy was a threat to the other children. However, defendants failed to prevent or investigate the attacks.

Plaintiffs' circuit court complaint was filed on October 31, 1983. On December 8, 1983, the parties stipulated to a consolidation of the circuit court claims with claims previously filed in the Court of Claims. The consolidated claims of plaintiffs are denominated as: (1) malpractice; (2) negligence; (3) gross negligence; (4) assault; (5) deprivation of civil rights; (6) intentional infliction of emotional distress; (7) breach of implied contract; (8) defective building and supervision; (9) nuisance; (10) civil conspiracy; and (11) loss of consortium.

On July 15, 1985, defendants filed a motion for summary disposition, alleging that the crux of plaintiffs' claims was malpractice or negligence and expressing a "sincere" belief that Mark was given proper care during his admission at Children's Psychiatric Hospital. More significantly for the purposes of this appeal, defendants asserted that they were all immune from tort liability under 1964 PA 170 as amended by 1970 PA 155, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* and requested relief under MCR 2.116(C)(7).

A hearing was held on defendants' motion on December 19, 1985. At the hearing, defendants continued to assert that summary disposition was proper on plaintiffs' medical malpractice and negligence claims under MCR 2.116(C)(7). Additionally, and for the first time, defendants asserted that summary disposition under MCR 2.116(C)(8) should be granted on plaintiffs' other claims because they were either redundant or failed to state a claim. The circuit court took the motion under advisement. On January 6, 1986, the circuit court issued an order granting summary judgment on plaintiffs' malpractice and negligence claims under MCR 2.116(C)(7), citing *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). The trial court also struck plaintiffs' remaining claims, noting that they were redundant and poorly drawn, citing MCR 2.115. Plaintiffs appeal from that order.

## II. GOVERNMENTAL IMMUNITY

A. Applicable Law.

The first matter to be addressed in this appeal is whether the trial court erred by applying the rule of *Ross, supra.* In *Ross,* our Supreme Court largely

rewrote the law of governmental immunity. However, the *Ross* Court gave no indication as to whether its new rules would be applicable to pending cases. Plaintiffs' complaint was filed on October 31, 1983—fourteen months prior to *Ross*. Defendants' motion for summary disposition was not filed until July 15, 1985—some six months after *Ross*.

In *Hyde v University of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847 (1986), our Supreme Court held that *Ross* was to have a "limited retroactive application" which the Court explained as follows:

> [T]he rules articulated in *Ross* apply to all cases commenced after January 22, 1985, the date our opinion was issued, and to those cases pending either in trial or appellate courts on January 22, 1985, in which a governmental immunity issue was properly raised and preserved. [*Hyde, supra,* 230.]

That rule appears simple on its face. However, as anticipated by the *Hyde* dissent, it is somewhat more complicated in application.

In *Powers v Peoples Community Hospital Authority,* 426 Mich 223; 393 NW2d 847 (1986), a case consolidated with *Hyde*, the complaint was also filed after *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), but before *Ross*. After stating its rule of limited retroactivity, the Supreme Court reasoned:

> In *Powers,* plaintiff's malpractice claim was filed after *Parker* was decided. *Ross* was issued while the case was still pending in circuit court. The court correctly concluded that plaintiff's claim should be denied pursuant to *Ross.* [*Powers, supra,* p 242.

Obviously, the fact that the *Powers* claim was filed after *Parker* but before *Ross* does not dispose of the issue of whether governmental immunity had been preserved. Moreover, somewhat earlier in *Powers*, the Court had noted that the defendant hospital had moved for summary judgment on the ground of governmental immunity only after *Ross* was released. *Powers, supra*, p 236. Some resolution to this problem is provided in footnote 7 of *Powers*, where the Court explained:

> This [post-*Ross* summary judgment motion] was the first time that the PCHA had raised the "defense" of governmental immunity. However, the PCHA's failure to raise the issue in its first responsive pleading did not waive it. See n 35. Plaintiff's complaint, filed prior to *Ross*, contained sufficient facts to raise a governmental immunity issue, or more specifically, a lack thereof. The complaint indicated that the PCHA operated a public general hospital, which was not entitled to immunity from tort liability pursuant to *Parker*. Moreover, paragraph two alleged that the PCHA was a profit-making institution. This allegation was sufficient to invoke the statutory "proprietary function" exception. [*Powers, supra*, p 236, n 7.]

Footnote 35, in turn, explains:

> Unlike other claims of immunity, sovereign and governmental immunity are not affirmative defenses, but characteristics of government which prevent imposition of tort liability. *Ross, supra; Galli* [*v Kirkeby*, 398 Mich 527, 541, n 5; 248 NW2d 149 (1976)]; *McCann v Michigan*, 398 Mich 65, 77, n 1; 247 NW2d 521 (1976). Compare MCR 2.111(F)(3)(a). [*Powers, supra*, p 261, n 35.]

Thus, although it is not expressly stated in *Powers*, we are led to believe that the rule of

limited retroactivity allows the issue of governmental immunity to be preserved solely by a plaintiff's pleadings in avoidance thereof prior to *Ross*. The fine print in which this rule is embodied does some injustice to the irony it promulgates. But then justice would appear to have little to do with a rule that penalizes those plaintiffs who pled most carefully in the tumultuous years prior to *Ross*. Nevertheless, the pleadings in the instant case, whether by genius or serendipity, have avoided the immediate pitfall of *Powers*. Here, although the complaint was filed after *Parker* and before *Ross*, it does not specifically allege that defendants were not entitled to immunity, nor does it allege that the defendant hospital was profit-making or that it was engaged in proprietary functions.

The complaint in this case does include a number of claims which, if properly stated, might avoid the effects of governmental immunity. Defendants have alleged that these claims were nothing more than an unsophisticated attempt to circumvent the rule of governmental immunity. Thus, defendants argue that plaintiffs raised the issue of immunity by pleading in avoidance thereof in much the same manner as the *Powers* plaintiffs.

We would be less than frank to deny our own inclination to view the plaintiffs' pleadings as an attempt to avoid the effects of governmental immunity. Nevertheless, we are unconvinced that plaintiffs' pleadings have preserved the issue of governmental immunity in the same manner as that endorsed by the *Powers* Court. While the profit-making or proprietary function pled in *Powers* has no ordinary meaning apart from the issue of governmental immunity, the additional claims of the plaintiffs at bar might state causes of action whether pled against a governmental or nongov-

ernmental entity.[1] We are not prepared to divine the true purposes of plaintiffs in pleading these claims. Such a step would take us beyond the harsh irony of *Powers*, into its Kafkaesque shadows. We therefore conclude that the issue of governmental immunity was not properly raised and preserved prior to January 22, 1985. *Ross* is therefore inapplicable to plaintiffs' claims.

B. The Pre-*Ross* Immunity of the Governmental Entity.

Since plaintiffs' claims against the defendant governmental entity were filed subsequent to *Parker v City of Highland Park, supra,* and since *Ross* is inapplicable, the issue of governmental immunity must be decided under the rule of *Parker. Murray v Beyer Memorial Hospital,* 409 Mich 217; 293 NW2d 341 (1980). In *Parker,* our Supreme Court held that activities conducted by a municipally owned general hospital providing medical services to the public for fees do not constitute a governmental function and therefore are not entitled to immunity. Following *Parker,* we held in *Churchwell v Regents of the University of Michigan,* 97 Mich App 463; 296 NW2d 75 (1980), that the activities of the University of Michigan Hospital, though state-owned, did not constitute a governmental function entitled to immunity. We see no reason to review *Churchwell's* interpretation of *Parker* at this late date. We therefore hold that the defendant governmental entity is not entitled to immunity. The trial court erred by granting summary disposition under MCR 2.116(C)(7) to this defendant.

---

[1] As discussed in Part III, *infra,* we take no position on whether these claims do state causes of action or are subject to summary disposition under MCR 2.116(C)(8).

### III. OFFICER IMMUNITY.

## A. Applicable Law.

Sovereign or governmental immunity, as noted in the *Powers* footnote quoted *supra,* are not affirmative defenses, but rather characteristics of government which prevent imposition of tort liability. It is for this reason that Michigan courts have held that plaintiffs must plead affirmatively in avoidance of sovereign or governmental immunity to state a claim against governmental entities. See *Hoffman v Genessee Co,* 157 Mich App 1; 403 NW2d 485 (1987). On the other hand, immunity is not an inherent characteristic of individual governmental employees and therefore must be raised as an affirmative defense in responsive pleadings. *Hoffman, supra.* See also MCR 2.111(F)(3). Thus, defendants argue that they were themselves entitled to raise the issue as to the individual defendants and the issue might therefore have been preserved prior to *Ross,* although not raised in the complaint.

We fully agree with this aspect of defendants' argument, though the fact remains that none of the defendants raised the issue of governmental immunity prior to *Ross.* Defendants acknowledge this fact, but argue further that they might have amended their pleadings to add the affirmative defense of governmental immunity. Defendants point out that, under MCR 2.118(D), an amendment would relate back to the date of their original response, which predated *Ross.*

There are two problems with this argument. First, defendants have not moved to amend their pleadings either in the trial court, under MCR 2.118(A), or in this Court, under MCR 7.216(A)(1). Moreover, as one commentator has explained, the

chief purpose of the rule allowing the relation back of amendments is to determine whether or not the statute of limitations has been satisfied. 1 Martin, Dean & Webster, Michigan Court Rules Practice, pp 474-481. We confess a great deal of trepidation in response to defendants' invitation to extend this rule from avoidance of the statutes of limitation to avoidance of stare decisis. Finally, excluding gross legal malpractice, to allow a relation back of amendments in this instance would be to entirely nullify the "limited" retroactive application of *Ross* apparently anticipated in *Hyde* and *Powers*. Therefore, addressing only those arguments raised by defendants, we would be inclined to apply pre-*Ross* law to the claims against the individual defendants. However, giving further consideration to the matter, we believe that it would be grave and perhaps ludicrous error to do so.

Although the matter was given scant attention by the parties in their briefs and arguments before this Court, *Ross* not only rewrote the law of governmental immunity as applied to governmental entities, but also as to individual employees— sometimes referred to as the law of officer immunity. As explained in *Ross*:

> The governmental immunity act does not address whether or when individual officers, employees, and agents are immune from tort liability. It merely authorizes governmental agencies to defend, indemnify, and insure officers and employees who have committed negligent torts during the course of their employment and while acting within the scope of their authority. §§ 8, 9. Thus, the existence and scope of individual immunity continues to be a creature of judicial decision-making. [*Ross, supra*, pp 628-629.]

As further explained in *Ross*, the law of individual

immunity was quite settled in Michigan prior to 1979: Officers and agents and employees were immune when engaged in discretionary, as opposed to ministerial, acts which were within the scope of their authority. *Ross, supra,* pp 625-626, citing *Wall v Trumbull,* 16 Mich 228, 235-238 (1867).

In 1979, two plurality decisions of our Supreme Court unsettled the law of individual governmental immunity. *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979); *Lockaby v Wayne Co,* 406 Mich 65; 276 NW2d 1 (1979). Following those decisions, this Court split three ways on the issue of officer immunity. Most panels held that governmental employees are generally immune when the tort occurs in the scope of their employment. See, e.g., *Knapp v Moreno,* 137 Mich App 769; 359 NW2d 560 (1984), vacated 422 Mich 886 (1985). Other panels held that governmental employees are generally immune when the tort occurs within the scope of their employment, but only if their employment was within a "governmental function" as then defined. See, e.g., *Pomilee v Detroit,* 121 Mich App 121; 328 NW2d 595 (1982), lv den 422 Mich 891 (1985). Still others continued to apply the ministerial/discretionary test established prior to *Bush* and *Lockaby.* See, e.g., *Fisher v Dep't of Mental Health,* 128 Mich App 72; 339 NW2d 692 (1983), rev'd 422 Mich 884 (1985).

*Ross* seemingly put an end to the chaos following *Bush* and *Lockaby* by reinstituting a modified ministerial/discretionary test for officer immunity. However, if we were to give literal effect to *Hyde,* the relatively safe haven of *Ross* would be out of reach and we would be thrown once again into the chaos of the *Bush* and *Lockaby* plurality decisions.

The effect of deciding these tort claims under

the pre-*Ross* Michigan law of officer immunity would be alternately fascinating, perverse and paradoxical. Perhaps the first question one might ask is what pre-*Ross* law applies? Should panel members refer to their own pre-*Ross* decisions?[2] Should new members of this Court return to the fertile ground of *Bush* and *Lockaby* for yet another Michigan common law rule of officer immunity? Might new splits be resolved by a Supreme Court deciding what it might have held if it had never decided *Ross*? It is one thing to come face to face with irony, stepping through the looking glass is entirely another matter.

We decline to apply *Hyde* to the issue of officer immunity for the technical reason that the issue was not before the *Hyde* Court. We decline to apply pre-*Ross* law to the issue of officer immunity for the simple and practical reason that Michigan had no pre-*Ross* law of officer immunity. We therefore hold that the individual defendants in this case are subject to the law of officer immunity as set forth in *Ross* and subsequent decisions of this Court.

B. Application of the Law.

The now-familiar rule of *Ross* regarding officer immunity is as follows:

> Lower level officials, employees, and agents are immune from tort liability only when they are
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority,
> 2) acting in good faith; and

---

[2] As an aside, it should be noted that, if we were to apply the pre-*Ross* rule of the majority of the panels of this Court, the positions of counsel at oral argument would be perverse. Plaintiffs, who urged that pre-*Ross* law should prevail, would find that there was no liability on the part of the individual defendants and, hence, no vicarious liability on the part of the governmental entity. Defendants, of course, argued contrary to this result.

3) performing discretionary, as opposed to ministerial acts. [*Ross, supra*, pp 633-634.][3]

Here there has been no allegation that the individual defendants acted in bad faith, nor is it disputed that the defendants were, at all pertinent times, acting within the scope of their employment. The only remaining issue under *Ross* is whether plaintiffs have properly pled that defendants were engaged in ministerial, rather than discretionary, acts.

The *Ross* Court has provided considerable guidance in distinguishing discretionary from ministerial acts:

"Discretionary" acts have been defined as those which require personal deliberation, decision, and judgment. Prosser, [Torts (4th ed)], § 132, p 988. This definition encompasses more than quasi-judicial or policy-making authority, which typically is granted only to members of administrative tribunals, prosecutors, and higher level executives. However, it does not encompass every trivial decision, such as "the driving of a nail," which may be involved in performing an activity. For clarity, we would add the word "decisional" so the operative term would be "discretionary-decisional" acts.

"Ministerial" acts have been defined as those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. *Id.* We believe that this definition is not sufficiently broad. An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a nontortious manner. In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a

---

[3] It is not alleged that any tortious act was committed by the members of the board of regents in their individual capacities.

decision and might entail some minor decision-making. Here too, for clarity, we would add the word "operational" so the operative term would be "ministerial-operational" acts.

Many individuals are given some measure of discretionary authority in order to perform their duties effectively. Therefore, to determine the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined. The ultimate goal is to afford the officer, employee, or agent enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner. [*Ross, supra*, pp 634-635.]

Turning again to the complaint, we find that some of the allegations of negligence are directed toward ministerial acts, while others are addressed to more discretionary acts of the individual defendants. In the former category are the following allegations of negligence or malpractice contained in paragraph 21:

21. that Defendants herein were negligent and violated the standards of care required of them as professionals in the care, treatment and housing of Mark Maurer during his stay at the said Children's Psychiatric Hospital in the following manner:

a. Failed to ensure that Mark Maurer was free from physical and emotional harm through physical or sexual assaults and abuse by fellow patients at said hospital.

* * *

c. Failed to properly supervise the patients on the ward or floor where Mark Maurer was a resident to ensure his safety.

d. Failed to properly investigate complaints and information regarding threats, physical and sexual assaults, and abuse upon Mark Maurer which

were brought to their attention by Mark Maurer and his parents.

In our view, the staff of a psychiatric hospital may exercise considerable judgment or deliberation in deciding whether to provide inpatient care and what the nature of the care, i.e., the treatment plan, will be. However, once the decision has been made to provide such care, it must be carried out in a conscientious manner. *Bolton v Jones,* 156 Mich App 642; 401 NW2d 894 (1986). It cannot seriously be contended that defendants retained discretion to allow or ignore repeated physical or sexual assaults upon patients entrusted to their care.[4] We hold that plaintiffs have properly pled that the negligent acts of the individual defendants occurred in the course of ministerial duties.

Since the pleadings establish that the individual defendants were acting in the course of ministerial duties during some of the acts of negligence, they are not entitled to officer immunity under *Ross.* The trial court erred in granting summary disposition to the individual defendants under MCR 2.116(C)(7).

### IV. THE ORDER OF SUMMARY DISPOSITION ON PLAINTIFFS' ALTERNATIVE THEORIES.

As we have previously noted, plaintiffs have leveled eleven separate claims in their complaint —each arising out of the same transaction or occurrence. After disposing of plaintiffs' malpractice and negligence claims under a theory of governmental immunity, the trial court took exception to the "unconventional-practice [sic] of the plaintiffs in raising a multiplicity of purported causes of action from the same series of incidents . . . ." On its own motion, the trial court then

---

[4] Paragraph 17 of the complaint states that defendants were aware of sexual assaults upon Mark Maurer "at various times."

proceeded to strike plaintiffs' claims under these alternative theories, citing MCR 2.115. On appeal plaintiffs take exception to the trial court's action in doing so.

The Michigan Court Rules provide in pertinent part:

> (B) Motion to Strike. On motion by a party or on the court's own initiative, the court may strike from a pleading redundant, immaterial, impertinent, scandalous, or indecent matter, or may strike all or part of a pleading not drawn in conformity with these rules. [MCR 2.115(B).]

Here, the trial court ruled that plaintiffs' alternative theories were not properly pled; that they failed to state claims upon which relief may be granted. MCR 2.116(C)(8).

We find no error in plaintiffs' election to plead various types of claims based upon the same transaction or occurrence. See, generally, 2 Martin, Dean & Webster, Michigan Court Rules Practice, pp 28-33. We *are* inclined to agree with the trial court's conclusion that plaintiffs' alternative theories were not properly drawn. On the other hand, we also note that plaintiffs had previously filed a motion to amend their complaint. Furthermore, we are aware that Michigan's liberal rule of amended pleadings is well-established under MCR 2.118(A)(2) and case law. *Commodities Export Co v Detroit,* 116 Mich App 57; 321 NW2d 842 (1982). We conclude that it was an abuse of discretion on the part of the trial court to strike the alternative theories under these circumstances without a hearing. *Commodities Export Co, supra.* Nevertheless, we do not preclude the trial court from striking any or all of these claims upon remand after affording plaintiffs a hearing on their motion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Costs to plaintiffs.